**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Daniel Lee SALTZMAN, Defendant–Appellee.**

No. 92–1019.

United States Court of Appeals, Tenth Circuit.

Jan. 22, 1993.

Vicki Marani (Michael J. Norton, U.S. Atty., and Craig F. Wallace, Asst. U.S. Atty., Dist. of Colo., Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, DC, on the brief), U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Vicki Mandell–King (Michael G. Katz, Federal Public Defender, with her on the brief), Asst. Federal Public Defender, Denver, CO, for defendant-appellee.

Before BRORBY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and KELLY, Circuit Judge.

BRORBY, Circuit Judge.

The Government appeals the district court's *sua sponte* dismissal with prejudice of the information filed against Daniel Lee Saltzman. The district court concluded the seven-month time period between Saltzman's arrest and filing of the information constituted a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1985). The issues presented are whether the delay in charging the Defendant mandates dismissal, and whether dismissal with prejudice is the appropriate remedy.

I.

On March 14, 1991, Daniel Lee Saltzman obtained one liter of phenyl–2–propanone $(P_2P)$ [1] from an undercover agent and was subsequently arrested. After executing a valid search warrant, the agent found chemicals and supplies used for manufacturing methamphetamine in Saltzman's garage. On April 3, 1991, the Defendant orally "waived" his right to an indictment within thirty days guaranteed by 18 U.S.C. § 3161(b), after indicating to the magistrate judge that he understood this right. The Defendant executed a written "waiver" of his right to a speedy indictment on April 18, 1991. On May 8, 1991, the Defendant was once again brought before a magistrate judge and both counsel agreed that the Defendant would "waive" his rights to a speedy indictment until July 1, 1991. A similar situation occurred on July 12, 1991,[2] extending the speedy indictment waiver until August 23, 1991.

Subsequently, at least two more continuances were granted before an information was finally filed on October 7, 1991. Despite at least nine opportunities, the magistrate judges never made the specific findings required by 18 U.S.C. § 3161(h)(8)(A) "that the ends of justice served by [granting a continuance] outweigh the best interest of the public and the defendant in a speedy trial." The prosecutor and defense counsel also neglected to request that such findings be made.

During this seven-month delay, the Defendant was incarcerated for the first thirty-three days but then agreed to assist the Government as an informant and was released. This cooperation proved helpful to the Defendant because the plea agreement executed halved the Defendant's potential sentence.[3] This agreement was never en-

---

1. $P_2P$ is an essential precursor chemical for the manufacture of methamphetamine.

2. We note there exists a lapse in the time period. The indictment was waived until July 1; on July 12 another waiver was executed, but there exists no waiver for the time in between.

3. The plea agreement placed the Defendant at an offense level of 12, yielding a potential sentence of fifteen to twenty-one months, as opposed to a level of 20 with a range of forty-one to fifty-one months, which the Defendant would have received under the original charge. The discrepancy in offense levels can be attributed to the fact that the original charge was for possession of $P_2P$ with intent to manufacture methamphetamine, which is given a higher drug equivalency conversion than mere possession of

tered, however, due to the trial court's *sua sponte* dismissal.

The trial court noticed the lack of these essential findings and acted *sua sponte* in dismissing the information with prejudice. The court reasoned that no waiver occurred because (1) the waiver was not knowing, informed and voluntary, and (2) the Defendant's purported waivers were invalid as a matter of law. The court applied the standards enunciated in 18 U.S.C. § 3162(a)(1) in determining the appropriate sanction was dismissal with prejudice.

## II.

■ The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings. *United States v. Noone,* 913 F.2d 20, 28 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991). Accordingly, § 3161(b) requires an indictment or information be filed within thirty days of the arrest.[4] On its face, the Government violated this provision.

■ Delays causing an indictment or information to be filed in excess of thirty days may be excludable under § 3161(h). The exceptions in § 3161(h) are exclusive. *United States v. Carrasquillo,* 667 F.2d 382, 388 (3rd Cir.1981). The only applicable exception for this case is § 3161(h)(8), which excludes any period of delay resulting from a continuance granted on the basis of a judge's findings that the ends of justice served by the continuance outweigh

the best interests of the public and defendant in a speedy trial.[5] The factors to be considered in making ends of justice findings are provided in § 3161(h)(8)(B).

The Third Circuit explains the dual purpose of making these findings:

First, Congress wanted to insure that a district judge would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving speedy trial." Second, the requirement provides a record so that an appellate court may review the decision.

*United States v. Brooks,* 697 F.2d 517, 520 (3rd Cir.1982) (citation omitted), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). The specific language in § 3161(h)(8)(A) states periods of delay are not excludable unless the court sets forth "ends of justice" findings either orally or in writing. The record is completely void of such findings.

■ The Tenth Circuit also recognizes the importance of enunciating the "ends of justice" findings. "Failure to address these issues on the record creates the unnecessary risk of granting continuances for the wrong purposes, and encourages overuse of this narrow exception." *United States v. Doran,* 882 F.2d 1511, 1515 (10th Cir.1989). Other circuits concur in holding no excludable delays are permitted without "ends of justice" findings. *United States v. Perez–Reveles,* 715 F.2d 1348, 1352 (9th Cir.1983); *Carrasquillo,* 667 F.2d at 389–90; *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 376 n. 12 (2d Cir.1979). Further, the findings must oc-

---

P₂P, the charge in the plea. United States Sentencing Commission, *Guidelines Manual,* § 2D1.1 (Drug Equivalency Tables) at 86 (Nov. 1991).

4. 18 U.S.C. § 3161(b) provides in pertinent part:
   (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

5. Section 3161(h)(8)(A) specifically excludes:
   Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his

counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

cur contemporaneously with the continuance because Congress intended that the decision should be prospective, not retroactive. *Doran*, 882 F.2d at 1516. Therefore, the magistrate judges' failure to make "ends of justice" findings at each continuance precludes an examining court from justifying the continuances retroactively.

■ The Government contends that Mr. Saltzman knowingly waived his right to a speedy indictment. This contention fallaciously assumes a defendant has the authority to waive the speedy indictment provision. The right to a speedy indictment belongs to both the defendant and society. *Carrasquillo*, 667 F.2d at 389. Therefore, provisions of the Speedy Trial Act cannot be waived by a defendant acting unilaterally because it would compromise the public interest in speedy justice. *United States v. Willis*, 958 F.2d 60, 63 (5th Cir.1992); *United States v. Berberian*, 851 F.2d 236, 239 (9th Cir.1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *United States v. Pringle*, 751 F.2d 419, 433–434 (1st Cir.1984). This interpretation comports with Congress' intent. The Senate Committee made clear,

> in the strongest possible terms, that any construction which holds that any of the provisions of the Speedy Trial Act is waivable by the defendant, ... is contrary to legislative intent and subversive of its primary objective: protection of the societal interest in speedy disposition of criminal cases by preventing undue delay in bringing such cases to trial.

S.Rep. No. 212, 96th Cong., 1st Sess. 29 (1979).

Consequently, the Defendant's purported "waivers" of his right to a speedy indictment do not extend the statutory thirty-day period in which an indictment must be filed. "The fact that the defendant has requested the continuance or consents to it is not in itself sufficient to toll the operation of the time limits." Administrative Office of the United States Courts, *Amended Speedy Trial Act Guidelines* (Aug.1981), *reprinted in* Robert L. Misner, *Speedy Trial Federal and State Practice*, app. B 775 (1983). It is incumbent on the court to make the

necessary § 3161(h)(8)(a) findings before a court may grant a continuance. *Perez–Reveles*, 715 F.2d at 1352. Therefore, we find an attempted "waiver" by the Defendant is necessarily invalid unless the court simultaneously makes "ends of justice" findings. *See Carrasquillo*, 667 F.2d at 390. "It would be inconsistent with the statutory scheme to permit a defendant, through a purported 'waiver,' to relieve the court of this obligation." *Amended Speedy Trial Act; Guidelines* at 776.

Because the filing of the indictment or information lies entirely within the prosecutor's discretion, it is ultimately the obligation of the Government to ensure compliance with the Speedy Trial Act. As the Supreme Court points out in *Doggett v. United States*, — U.S. —, —––—, 112 S.Ct. 2686, 2693–94, 120 L.Ed.2d 520 (1992), "[t]he Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it."

The courts share with the government the responsibility to protect the speedy trial rights of both the defendant and society. *Doran*, 882 F.2d at 1517. The magistrate judges' collective failure to make any § 3161(h)(8)(a) "ends of justice" findings is a blatant disregard to detail and an abandonment of their obligation to protect the rights of the Defendant and of the public. Moreover, the statute imposes an obligation upon the court to reject a waiver offered by the Defendant. *Pringle*, 751 F.2d at 434.

The applicable law is clear. The fact that a defendant is desirous of waiving his right to receive an information does not result in a waiver. An effective waiver occurs only if the judge considered the defined factors and concluded the ends of justice are served by an acceptance of the defendant's waiver. We can sympathize with the fact that magistrate judges must face a large number of cases; however, a busy docket does not excuse a magistrate

judge's failure to accomplish a mandatory duty imposed by law. The prosecutor should not lose sight of the fact that she is more than a prosecutor; she represents the people and for this reason shares the obligation to assure the mandates of the law are followed. In the case before us, the system failed. Mr. Saltzman was desirous of waiving his rights to the prompt filing of an information in return for a lesser sentence, while the prosecutor and the magistrate judges were oblivious to their obligations to protect the public's concomitant rights as mandated by law.

■■■ We concur with the district court's conclusion to dismiss the information. We review the disposition of a Speedy Trial Act issue for clear error as to factual findings and de novo as to application of legal standards. *Berberian,* 851 F.2d at 239. The factual findings of a violation of the Speedy Trial Act are well substantiated. The district court correctly applied the first sentence in 18 U.S.C. § 3162(a)(1) [6] requiring mandatory dismissal of the information when the Act is violated. *See United States v. Peeples,* 811 F.2d 849, 850 (5th Cir.1987).

### III.

■■ In determining whether to dismiss the information with or without prejudice for a violation of the Speedy Trial Act, the district court should consider the following factors listed in § 3162(a)(1): "[T]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of this chapter and on the administration of justice." The district court's determination will be reversed only for an abuse of discretion. *Peeples,* 811 F.2d at 850. Because "Congress has declared that a decision will be governed by consideration of particular factors," appellate review is limited to ascertaining

"whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy." *United States v. Taylor,* 487 U.S. 326, 336–337, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988). It is imperative for the district court, however, to "carefully consider those factors as applied to the particular case and ... clearly articulate their effect". *Id.* at 336, 108 S.Ct. at 2419. Because Congress put in place meaningful standards, review must ensure the purposes of the Act are put into effect. *Id.* The Supreme Court notes, "a decision calling for the exercise of judicial discretion 'hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.'" *Id.* (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)).

■■ The district court erred in interpreting from the legislative history that a dismissal without prejudice is only available in "exceptional circumstances." [7] The Supreme Court specifically rejected this reading of the legislative history and stated: "[W]e are unwilling to read such a preference into the statute, which evinces no presumptions." *Taylor,* 487 U.S. at 335 n. 8, 108 S.Ct. at 2418–19 n. 8. Thus, the district court misapplied the law in assuming dismissal with prejudice is the preferred remedy.

Because the district court began its analysis with an incorrect premise as to the determination of the appropriate remedy, we will reexamine the factors enunciated in § 3162(a)(1) to ensure these factors are carefully considered and the purpose of the Act is effectuated, in accordance with *Taylor.*

### A.  SERIOUSNESS OF OFFENSE

■■ If the court determines the offense committed by the defendant is serious, this

---

6.  18 U.S.C. § 3162(a)(1) begins:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by sec-

tion 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

7.  H.R.Rep. No. 96–390, U.S.Code Cong. & Admin.News 1979, p. 805 indicates dismissal with-

factor weighs in favor of dismissing without prejudice. *See United States v. May*, 819 F.2d 531 (5th Cir.1987). The district court correctly evaluated the Defendant's charge as serious. Obtaining P$_2$P with the intent to manufacture methamphetamine is a serious drug-related crime.[8] "When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice." *May*, 819 F.2d at 534.

## B. FACTS AND CIRCUMSTANCES

■ In evaluating the second aspect of the test, facts and circumstances leading to the dismissal, the court should focus "on the culpability of the delay-producing conduct." *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). The district court emphasized the Government's failure to file a timely indictment in compliance with the Speedy Trial Act, as well as the Defendant's lack of understanding of his speedy trial rights. While we agree the Government bears the burden of ensuring the Defendant's speedy trial rights are not violated, a violation mandates dismissal but does not on its face indicate whether the dismissal should be with or without prejudice. The district court should specifically articulate its reasoning behind the determination that the second factor merits dismissal with prejudice. *See Taylor*, 487 U.S. at 337, 108 S.Ct. at 2419.

■ Beyond citing the Government's responsibility in filing a timely indictment, the district court only referenced two particular facts or circumstances which it feels support dismissal with prejudice. First, the district court cited the Government's alleged failure to conform with the requirements of the Bail Reform Act. The dismissal provisions of the Speedy Trial Act, however, may not be used to remedy other violations. *See Hastings*, 847 F.2d at 927. Thus, any detention that allegedly violated the Bail Reform Act is irrelevant when considering Speedy Trial Act remedies.

Second, the district court questioned the adequacy of defense counsel's advice, concluding the Defendant's acquiescence to the delays was ill-informed. Not only do we disagree that the Defendant's acquiescence was unknowing, but we conclude the record indicates the delays were equally attributable to both the defense counsel and the Government. During the hearing on April 3, 1991, the Defendant acknowledged his understanding of the speedy indictment right upon questioning of the court yet acquiesced to a purported "waiver" of that right. During the May 8, 1991 hearing, defense counsel reiterated the government's request to "waive" speedy indictment rights, and on July 12, 1991, defense counsel made a concurrent motion for the permanent abandonment of the Defendant's speedy indictment right. Further, the signed purported "waiver" of the Defendant's speedy indictment right indicates that the Defendant's acquiescence was indeed knowing. The record provides no indication that the Defendant did not fully understand his right to a thirty-day indictment.

In fact, the Defendant disregarded his speedy indictment rights in an effort to cooperate with the Government as an informant and thus gain the advantage of a lesser sentence. Defense counsel's non-assertion of the Defendant's speedy indictment rights was a strategic ploy designed to reduce the charge or sentence imposed against the Defendant. The plea agreement the parties sought to enter charged the Defendant with the crime of possession with intent to distribute P$_2$P, instead of the original charge of possession with intent to manufacture methamphetamine, cutting the Defendant's potential sentence range in half.

■ Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government,

---

out prejudice should be the exception not the rule.

**8.** Generally, felony drug charges have been treated as serious offenses. *See Taylor*, 487 U.S.

at 337–38, 108 S.Ct. at 2419–20; *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir.1992); *May*, 819 F.2d at 534.

dismissal with prejudice is the appropriate remedy. *Kottmyer*, 961 F.2d at 573. Conversely, "[a] defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir.), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988). In this situation, the Defendant did not only wait passively, but completely acquiesced to the postponement of his indictment. Similarly, in *Peeples*, the defendant also attempted to execute a "waiver" of his speedy trial rights. The court reasoned since the defendant was at least partially responsible for the delay, it "substantially undercuts any weight the length of the delay may have had in favor of dismissal with prejudice". *Peeples*, 811 F.2d at 851. Because Saltzman knowingly acquiesced to speedy indictment delay, and the delay was attributable largely to Saltzman's cooperation with the Government for a reduced sentence, the facts and circumstances leading to the dismissal would favor a dismissal without prejudice.

## C. IMPACT OF REPROSECUTION ON ADMINISTRATION OF ACT AND JUSTICE

In concluding dismissal with prejudice serves the administration of the Act and justice, the district court relied primarily on two arguments. First, the district court explained, "[t]o grant dismissal without prejudice would sanction the conduct described herein and undermine the Act." The Supreme Court, however, has specifically rejected this notion. If the "deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other [statutory] factors ... would be superfluous, and all violations would warrant barring reprosecution." *Taylor*, 487 U.S. at 342, 108 S.Ct. at 2422. The Supreme Court also emphasizes that dismissal without prejudice is not a toothless sanction but forces the Government to obtain a new indictment and raises potential statute of limitations problems. *Id.*

Second, the district court also emphasized the importance of the § 3161(h)(8)(A) findings on the administration of justice. The court concluded mandatory dismissal serves the administration of justice but never addressed whether dismissal with or without prejudice better served the administration of justice with reference to the facts in this particular case.

We conclude the administration of justice in this instance is best served by dismissing without prejudice and allowing reprosecution. In making this determination, a court should consider the prejudice suffered by the defendant from the delay. *Kottmyer*, 961 F.2d at 573. The district court neglected to evaluate whether the delay caused any prejudice to the Defendant. Although the Supreme Court clarifies that prejudice to the defendant should not be the dispositive factor, the Court notes "there is little doubt that Congress intended this factor to be relevant for a district court's consideration." *Taylor*, 487 U.S. at 334, 108 S.Ct. at 2418.

Saltzman suffered no prejudice as a result of the seven-month delay prior to the filing of his information. Because his cooperation with the Government led to a reduced charge, the delay proved beneficial to Saltzman. In his brief, Saltzman claims he suffered prejudice from his incarceration, and did not receive a favorable plea agreement. Because Saltzman was released after thirty-three days of incarceration, he suffered minimal prejudice as a result of the failure to file an indictment within thirty days. Although Saltzman waived his right to contest pretrial detention, any prejudice endured resulting from an unknowing waiver of this right cannot be converted into prejudice resulting from not obtaining a speedy indictment. Speedy indictment prejudice would not commence until the thirtieth day, and in this case is held to be minimal. Further, the plea agreement reduced the Defendant's potential sentence in half. *See supra* n. 3. Finally, the defendant has a burden under the Act to show specific prejudice other than that occasioned by the original filing. *United States v. Kramer*, 827 F.2d 1174

(8th Cir.1987); *Peeples,* 811 F.2d at 852. Because the Defendant failed to sustain his burden, the administration of justice is best served by dismissal without prejudice.

■ Therefore, the totality of the factors considered under § 3162(a)(1) leads us to conclude dismissal without prejudice is the appropriate remedy.

AFFIRMED in part and REVERSED in part. The matter is REMANDED to the District Court for such further proceedings as may be appropriate in accordance with this opinion.