**UNITED STATES of America,
Plaintiff,**

v.

**Andrew Damie SMITH, Frank Darrell Beising, David Sandberg, Sean E. Westfall, David Lee Hawes, Angelo Jacobo Stratton, Defendants.**

Case No. 1:01–cr–0060PGC.

United States District Court,
D. Utah,
Central Division.

Oct. 8, 2002.

---

**44.** *Miller,* 978 P.2d at 931. **45.** *Id.*

Bel–Ami J. de Montreux, Mark J. Gregersen, Stephanie Ames, Salt Lake City, UT, Michael J. Boyle, Daniel Drage, Boyle & Drage, Angelo Jacobo Stratton, Ogden, UT, Scott C. Williams, Sharon L. Preston, Mark S. Kouris, Salt Lake City, UT, for defendant.

Richard D. McKelvie, U.S. Atty's Office, for U.S.

## MEMORANDUM ORDER AND OPINION DISMISSING INDICTMENT WITH PREJUDICE FOR VIOLATION OF THE SPEEDY TRIAL ACT

CASSELL, District Judge.

## MEMORANDUM DECISION AND ORDER

This matter is before the court on motions by defendants David Sandberg, Sean Westfall, Frank Beising, Andrew Smith, David Lee Hawes, and Angelo Jacobo Stratton, to dismiss the indictment for violations of the Speedy Trial Act. The court heard oral argument on these motions on September 26, 2002. At the hearing, the government was represented by Assistant United States Attorney Richard D. McKelvie; Darrell Beising was represented by Bel Ami Montreux, Frank Smith was represented by Mark Kouris, David Sandberg was represented by Sharon Preston, Sean Westfall was represented by Stephanie Ames, David Lee Hawes was represented by Mark Gregersen. Angelo Jacobo Stratton was not present, but had filed written motions sufficient to join in this matter pro se. At the conclusion of the hearing, the court ordered the indictment dismissed with prejudice, as to all defendants. This order more fully explains the court's decision.

## FACTUAL BACKGROUND

The court finds the following facts. Between November 1999 and January 2000, some army property was stolen in Northern Utah. The government began an investigation around the time, which included interviewing most of the defendants around March 2000. About 17 months later, on August 1, 2001, the government sought and received a two-count indictment charging defendants Frank Beising, David Hawes, Sean Westfall, Angelo Strat-

ton, Don Westfall, David Sandberg, and Andrew Smith with two counts of theft of government property and aiding and abetting the theft.[1] Count 1 alleged theft of "medical and surgical materials belonging to the U.S. Department of Defense"; Count 2 alleged theft of "cast aluminum ramps and poles belonging to the U.S. Department of Defense." Each count alleged that the value of the property taken exceeded $1,000.

Within the next few weeks, each of the defendants appeared for arraignment. Chief Magistrate Judge Boyce set a trial date of October 29–31, 2001 before Judge Dee Benson. A deadline for filing motions of September 24, 2001, was also set. Most of the defendants were released from custody, but were made subject to various conditions of release—e.g., requirements that they continue to reside at their current residence, not leave Utah without permission of Pre–Trial Services, observe a curfew of 8:00 p.m. to 6:00 a.m., and refrain from possessing any firearm The government requested detention for one defendant—David Sandberg—who was detained, although he was apparently also subject to detention for another offense.

During the months of September and October, defense counsel for the defendants tried repeatedly to contact the United States Attorney's office to receive further discovery, to conduct plea negotiations, and to prepare for a trial. A central concern of defense counsel was the government information concerning the value of the property allegedly stolen, which plays a prominent role in determining sentencing for property offense. Defense counsel made a number of phone calls to the U.S. Attorneys Office and left repeated messages, but received no response from the United States Attorney's

Office. Letters were also faxed to the U.S. Attorney's Office, to which no response was received.

On September 24, 2001, defendant David Hawes filed a motion to suppress evidence seized during a search of his residence and requested an evidentiary hearing. The motion noted that the officers involved in the search claimed in their reports that a search warrant was obtained from Judge West, yet defense counsel could locate no such warrant. No response to this motion was ever filed. While the government, under the court's local rules is not required to respond to such motions,[2] it never attempted to schedule a hearing on this motion. Nor has the government, to date, provided a copy of the search warrant to defense counsel for Mr. Hawes.

On October 2, 2001, counsel for Don Westfall wrote a letter to Mr. McKelvie expressing concern about the lack of contact from the U.S. Attorney's Office and the failure of the government to provide information about the value of the property stolen. The letter requested this information and an explanation for the delay in responding to defense counsel. No response to the letter was received.

On October 4, 2001, defendant Don Westfall filed a motion for a Bill of Particulars concerning the value of the property he was alleged to have stolen. The United States did not respond to this motion. On October 17, 2001, Judge Benson signed an order directing the government to provide this information 14 days before trial. The government never provided this information.

On October 11, 2001, defendant Angelo Stratton filed a similar motion for a Bill of Particulars. The United States did not respond to this motion. On October 24,

---

1. Docket Entry # 1–1, alleging violations of 18 U.S.C. §§ 641, 2.

2. DU R. Crim Pro. 12

2001, Judge Benson signed another order directing the government to provide this information 14 days before trial. To date, the government has not provided this information.

On October 10, 2001, defendant Don Westfall filed a motion to sever his trial from that of the other defendants. He argued that, because of the statements made by other defendants that could potentially implicate him, a separate trial was required. He also indicated that he did not want his trial to be delayed due to the pending motion to suppress filed by defendant David Lee Hawes. The government never responded to this motion.

On October 17, 2001, a meeting was held between all defense counsel. Just before this meeting, Mr. McKelvie called Mr. Williams. He indicated that the discovery regarding the value of the property had not been provided and indicated that he would get that information to counsel. During the meeting, various defense counsel indicated that they had had difficulties reaching the prosecutor.

On October 22, 2001, defendant David Hawes filed a motion to continue the trial. The motion represented that defense counsel for Mr. Hawes had left messages for the government regarding plea discussion, which had not been returned. The motion also indicated that Mr. Hawes had not received the search warrant alluded to in his motion to suppress and that telephone calls regarding scheduling the motion to suppress had not been returned by the government.

On October 26, 2001, the Friday before the Monday on which the trial was scheduled to begin, defendant David Sandberg filed a motion to continue trial. This motion indicated that Mr. McKelvie had given his consent to the matter being continued. The motion was mailed on October 24, 2001, to defense counsel. During the day of October 26, 2001, Mr. Williams asked the court whether the trial was still going to go as scheduled. The court advised Mr. Williams that it was going as scheduled. On Saturday, October 27, 2001, Mr. Williams received a note from his receptionist indicating that the court clerk had called and that the matter "was not going on Monday." Nonetheless, Mr. Williams and one other defense attorney along with two defendants appeared in court on Monday and found that, as the clerk had indicated, the trial was not going. No other trials or hearings were scheduled that day. The government took no further action to schedule the matter for trial or for a hearing on the suppression motion.

On January 25, 2002, one of the defendant's sent a letter to the U.S. Attorney's Office offering to provide information to the government and assist in resolving this matter. There was no response to that letter.

On March 29, 2002, defendant David Hawes filed a motion for a Bill of Particulars along the lines of those earlier filed. The motion requested the information within 45 days of the order. The government did not respond to the motion. This led defense counsel to file a notice to submit the issue for decision on May 14, 2002. Judge Benson granted the motion on May 21, 2002. The defendant had requested the information within 45 days of the ruling. Judge Benson's order was silent on the time frame for the information to be provided. As a result, defense counsel for Mr. Hawes sent a letter on May 28, 2002, requesting the information within 45 days. There was no response to this letter. As a result, defense counsel sent a second letter on July 15, 2002, seeking the information within 15 days. There was no response to this letter. Defense counsel also made several telephone calls seeking the information. These calls were not responded

to. To date, no Bill of Particulars has yet been provided.

On October 30, 2001, defendant Don Westfall filed a motion to dismiss for unconstitutional delay and violation of the Speedy Trial Act. On May 8, 2002, more than six months later, the government had not responded to the motion. Defense counsel therefore submitted a notice to submit the matter for decision. On May 16, 2002, Judge Benson granted defendant Don Westfall's motion to dismiss with prejudice.

On July 3, 2002 and again in early August, one of Judge Benson's law clerks called Mr. McKelvie and left a telephone message concerning the lack of response to the motions. Those telephone calls were not returned directly, but Mr. McKelvie did call to learn that the matter had been reassigned to Judge Cassell. Mr. McKelvie, however, did not file a response to the motion in July or August.

During the summer of 2002, all the remaining defendants filed motions to dismiss for speedy trial violations, tracking the arguments of defendant Don Westfall's successful dismissal motion. During the spring and summer of 2002, two of the defendants, Frank Beising and Sean Westfall were picked up for violating conditions of release by producing urine samples that contained illegal drugs.

On about July 15, 2002, the case was transferred to Judge Cassell. In mid-August one of Judge Benson's clerks sent the motions to Judge Cassell's chambers. Judge Cassell then attempted to schedule a hearing. Because of conflicting schedules of the multiple defense attorneys on the matter, no hearing was possible until September 26, 2002.

On September 20, 2002, less than a week before the hearing, and about eleven months after the first motion to dismiss for unconstitutional delay was filed, the government filed a response conceding a violation of the Speedy Trial Act but requesting that the required dismissal be without prejudice. The government explained its primary witness on the issue of valuation of the items stolen had retired and the Department of Defense had not been helpful in this matter.

## BASIS FOR DISMISSAL

 In light of the government's concession that the Speedy Trial Act has been violated, the issue before this court is whether to dismiss this case with or without prejudice. In *United States v. Taylor*,[3] the Supreme Court clarified the relevant factors in determining whether or not a dismissal should be with or without prejudice. The District Court must consider among other factors:

1) the seriousness of the offense;

2) the facts and circumstances of the case which led to the dismissal;

3) the impact of a reprosecution on the administration of justice; and

4) prejudice to the defendant.[4]

### 1. *Seriousness of the Offense.*

This case involves a series of thefts from army property that occurred between late 1999 and early 2000. The government interviewed most or all of the defendants by March 2000, but waited more than fifteen months before seeking an indictment. This suggests the prosecution was not a high priority. Nor has the government's conduct since the filing of the indictment suggested that this is an important prosecution. Mr. McKelvie essentially conceded at the motion hearing that this case has not been a priority prosecution. While not

---

**3.** 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988).

**4.** *Taylor,* 487 U.S. at 333–334, 108 S.Ct. 2413.

condoning the offense, the court also recognizes that it is a property offense that in no way involved violence, drugs, or use of a weapon.[5] At the hearing on this matter, Mr. McKelvie conceded that the government could not prove the offense involved anything more valuable than property worth $2,000.

In the government's response to the motion to dismiss, the government made some general reference to how this offense might have affected military preparedness. But the defendants are not charged with any offense affecting military preparedness. Nor would it be fair to allow the government to suggest that this property was a critical part of military preparedness when the defendants' motions for a Bill of Particulars has gone unanswered for so long.

■ The court must assess the seriousness of the charges against the delay in the case.[6] This was a theft of property valued at $2000, that involved no use of violence or a weapon. This is balanced against a delay of many, many months in this case, so many months, indeed, that the government has not even troubled to calculate the number of days by which the Speedy Trial Act was violated. Given the fact that this crime was relatively minor, so minor the government did not make it a priority for prosecution, weighed against the substantial delay, the first factor argues in favor of dismissal with prejudice. The balancing of the seriousness of the offense against the length of the delay is to be done by the court in conjunction with the other enumerated factors from *Taylor*.[7]

2. *Circumstances Leading to dismissal.*

■ In evaluating the circumstances causing the dismissal, the court is to focus on the culpability of the delay-producing conduct.[8] In making this determination, the court should "specifically describe the Government's conduct and find that conduct to be more than 'an isolated unwitting violation,'[9] it must be a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect,'[10] or 'other serious misconduct.'"[11] Here it is beyond question that the delay was *not* an isolated, unwitting violation. While there is no evidence the delay was produced by intentional dilatory conduct, the delay was plainly part of a pattern of neglect by the government. The U.S. Attorney's Office knew that the issue of the value of the items stolen was critical to any plea negotiations and trial. The District Court ordered a Bill of Particulars filed over a year ago. The retirement of the individual within the Defense Department's Criminal Investigation Service who had knowledge of the value of the items, may have caused some delay, but a delay of over a year is plainly unreasonable.

Furthermore, there is a pattern of failing to answer reasonable inquiries from defense counsel. As recounted above, there are numerous examples of telephone calls and letters that have gone without response. To be sure, the response to some of these calls may have been only to

---

5. *See United States v. Saltzman,* 984 F.2d 1087, 1093 n. 8 (10th Cir.1993), *cert. denied,* 508 U.S. 964, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993); *United States v. Wells,* 893 F.2d 535, 538 (2nd Cir.1990).

6. *Saltzman,* 984 F.2d at 1093.

7. *United States v. Jones,* 213 F.3d 1253, 1257 (10th Cir.2000).

8. *Saltzman,* 984 F.2d at 1093.

9. *United States v. Taylor,* 487 U.S. 326, 108 S.Ct. 2413 at 2421, 101 L.Ed.2d 297.

10. *Id.* at 2420

11. *United States v. Wells,* 893 F.2d 535, 539 (2nd Cir.1990).

inform defense counsel of the lack of available information about the value of the property. But that fact is not a good reason for failing to acknowledge the calls and letters. Effective functioning of the criminal justice system requires that prosecutors and defense attorneys remain in close contact with each other. Moreover, some of defense counsel's inquiries plainly could have received a prompt answer. For example, defense counsel for Mr. Hawes, having been unable to locate search warrant in the state court files, requested a copy of the search warrant from the government. No such warrant has been provided more than a year later. At the hearing on these matters, Mr. McKelvie indicated that he thought that this had been resolved some time ago; yet defense counsel explained it had not and there is no indication in the court's file that such discovery has been provided.

Finally, the government has a pattern of delaying responses to defense functions. Under the court's local rules, a response to motions within 10 days is generally required absent unusual circumstances.[12] In this case, the government delayed responding to various motions by a matter of months, when it responded at all.

In short, the record shows a clear pattern of neglect by the government. Defense counsel in this matter bears no culpability for this delay.[13] This factor, too, suggests dismissal with prejudice is appropriate.

3. *Impact of reprosecution on the administration of the Act and the ends of justice.*

This factor requires the court to determine whether or not dismissal with or without prejudice would best serve the administration of the Act and the ends of justice.[14] In the instant case the court concludes the administration of justice would not be harmed by a dismissal with prejudice.

■ The defendant's have asserted their Speedy Trial Act rights in a timely manner and did not sit on them waiting the eve of trial.[15] They repeatedly requested responses from the government on both the bill of particulars and their motion for relief under the Speedy Trial Act. The government at this point cannot claim the "ends of justice" will require reprosecution when for more than a year it chose to essentially do nothing to move the case along.

Even the government's own witness is difficult to locate at this point in time. To date, the government has acknowledged it does not have sufficient evidence to accurately establish the value of the items stolen, a critical element of the crime. At oral argument the government acknowledged if this was dismissed without prejudice it would not seek another indictment of these defendant's until it could sufficiently prove the value of these items. The government, however, was unable to indicate when—if ever—it would be able to gather that information. The ends of justice do not suggest waiting longer to learn the answer to a question that should have been answered long, long ago.

4. *Prejudice to the Defendant.*

Though not a statutory factor, prejudice to the defendant can be a significant factor in determining whether to dismiss without prejudice.[16] In this case, the defendants—

---

12. DU Crim R. 12–1; DU Civ.R. 7–1.

13. *See Saltzman,* 984 F.2d at 1093.

14. *Jones,* 213 F.3d at 1257–58.

15. *Id.* at 1258.

16. *Jones,* 213 F.3d at 1258.

although generally released pending trial—have suffered significant restrictions on their liberty. Moreover, defendant Beising has been in custody for 119 days and Perry Westfall for 56 days on a pretrial violations, although they could have avoided incarceration by complying with the court's conditions of release. Defendant Stratton, while in custody on other charges, has apparently been unable to participate in a work-release program that would allow him to pay his child-support.

In addition, it seems probable that the defendants have suffered prejudice to their ability to defend the case. In light of the government's revelation of its difficulties with obtaining its own witness on valuation, it is unlikely the defendants would have any better luck identifying witnesses on the matter at this late date.

### 5. *Law of the Case.*

██ One last factor deserves mention. Judge Benson previously dismissed the indictment in this matter against co-defendant Don Westfall for a speedy trial violation. The government chose not to respond, for six months, to that motion for dismissal. After Judge Benson granted the unopposed motion to dismiss *with prejudice*, the government neither asked Judge Benson to reconsider his ruling nor sought to appeal the ruling. That ruling is thus the law of the case here.

While there are limitations on the law of the case doctrine,[17] the government's brief does not raise any reason for declining to apply this earlier ruling here. Thus, Judge Benson's early ruling supports dismissal with prejudice as well.

\*　　\*　　\*　　\*　　\*　　\*

In sum, this case involves the following factors: a comparatively low-value property crime; substantial delay caused solely by the government; lack of a timely response by the government to defendant's motions or phone calls; prejudice to the defendants from the delay; the absence of any specific information as to the value of the missing property for over a year after the indictment; the government's acknowledgment that it is unclear when, if ever, it can obtain that information; and a previous unchallenged ruling by the court dismissing the indictment against a co-defendant with prejudice. In view of these factors, dismissal of all charges against all remaining defendants in this case WITH PREJUDICE is plainly appropriate.

IT IS SO ORDERED.

---

17. *See, e.g., United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir.1993).