F I L E D
United States Court of Appeals
Tenth Circuit

MAR 28 2005

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee/
Cross-Appellant,

     v.

HECTOR CANO-SILVA, also known
as Hector Manuel CanoSilva, Hector
Cano, and Hector Silva-Cano,

     Defendant-Appellant/
Cross-Appellee.

Nos. 03-4059 & 03-4108

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. Nos. 2:02-CR-396-PGC & 2:01-CR-720-S)

Vicki Mandell-King, Assistant Public Defender (Michael G. Katz, former Federal
Public Defender, and Raymond P. Moore, Federal Public Defender, with her on
the briefs), Denver, Colorado, for Appellant/Cross-Appellee.

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States
Attorney, with him on the briefs), Salt Lake City, Utah, for Appellee/Cross-
Appellant.

Before **SEYMOUR** , **MURPHY** , and **McCONNELL** , Circuit Judges.

**McCONNELL** , Circuit Judge.

Defendant Hector Cano-Silva appeals the district court's decision to dismiss the indictment against him without prejudice after finding a violation of the Speedy Trial Act. The government cross-appeals the district court's determination that Mr. Cano-Silva's activities warranted a minor-participant adjustment leading to a reduction in his sentence.

*I. Background*

On November 28, 2001, Mr. Cano-Silva and David Padilla were indicted for conspiracy to distribute methamphetamine and cocaine. At his arraignment on November 29, 2001, Mr. Cano-Silva's trial date was set for January 28, 2002. A debriefing held on December 13, 2001 convinced counsel for both parties that continued plea negotiations would likely result in a change of plea, and counsel decided that the January trial date should be stricken and the time excluded from computation under the Speedy Trial Act.[1] The district court was notified of the request for continuance by telephone and the trial date was stricken. Each party believed the other was to make the motion to exclude time from computation under the Speedy Trial Act, and as a result the motion was never made. Plea

---

[1] While it is clear from the record that counsel agreed to the continuance and exclusion of time from computation under the Act, Defendant disputes whether he approved, or was even aware of, his lawyer's acquiescence in the continuation of the trial.

2

negotiations were complicated by an issue involving a confidential informant, the resolution of which was delayed by the limited availability of the case agent during the Salt Lake City Winter Olympics. Disclosure regarding the informant was ultimately made by pleading March 11, 2002. Despite counsels' early enthusiasm for plea negotiations, Mr. Cano-Silva ultimately rejected the government's plea offer. The relationship between Mr. Cano-Silva and his lawyer deteriorated, and on April 8, 2002, defense counsel moved the district court to permit his withdrawal, citing the breakdown of that perfect confidence that should mark the attorney-client relationship. On April 23, 2002, the district court granted the motion. The district court referred the case to a magistrate judge on April 30, 2002, and the magistrate judge appointed new counsel to represent Mr. Cano-Silva that same day.

Inspired to new diligence, perhaps, by this sudden activity, on May 2, 2002, the government filed a motion to exclude the time beginning December 13, 2001 until the new trial date from computation under the Speedy Trial Act. Mr. Cano-Silva's new counsel responded with a motion to dismiss with prejudice in light of the Speedy Trial Act violation. The magistrate judge denied the government's motion to exclude time, and the district court convened a hearing on Mr. Cano-Silva's motion to dismiss the indictment. At the conclusion of the hearing, the district court dismissed the indictment against Mr. Cano-Silva without prejudice.

3

The day after the dismissal the government obtained a new indictment against Mr. Cano-Silva for the same crimes charged in the initial indictment. A superceding indictment charged Mr. Cano-Silva with one count of possessing 50 grams or more of methamphetamine with intent to distribute and one count of possessing 500 grams or more of a mixture containing cocaine with an intent to distribute. A jury convicted Mr. Cano-Silva on both counts. Mr. Cano-Silva's base offense level was 38 due to the substantial quantities of drugs found in his car.[2] The seriousness of his offense combined with his criminal history category of II exposed Mr. Cano-Silva to a sentencing range of 262 to 327 months. The government moved for a two-level obstruction of justice enhancement based on allegations that Mr. Cano-Silva perjured himself at trial. Mr. Cano-Silva moved for a minor participant adjustment based on his allegedly limited role in Mr. Padilla's drug-distribution activities. The district court denied the government's motion for an obstruction of justice enhancement, granted Mr. Cano-Silva's request for a minor-participant adjustment, and sentenced Mr. Cano-Silva to the minimum period of incarceration permitted under the applicable guideline range:

---

[2] Approximately eight pounds of methamphetamine and five pounds of cocaine were found in the search of Mr. Cano-Silva's car. The drugs from the car, combined with the methamphetamine found in the storage shed rented to Mr. Padilla and frequently visited by Mr. Cano-Silva, translates into 62,016 kilograms of marijuana equivalent. Mr. Cano-Silva's base offense level was determined under U.S.S.G. § 2D1.1(c)(1), which provides for a base level of thirty-eight for 30,000 kilograms or more of marijuana equivalent.

4

210 months. After briefing before this Court had been completed, the United States Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Mr. Cano-Silva argued in supplemental briefing that *Blakely* rendered the United States Sentencing Guidelines unconstitutional in their entirety and requested remand for discretionary sentencing within the statutory limits.

## II. Analysis

### A. Speedy Trial Act Violation

Mr. Cano-Silva appeals the district court's dismissal of the indictment against him without prejudice, arguing that dismissal with prejudice was the appropriate remedy for the Speedy Trial Action violation. The Speedy Trial Act provides that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Periods of time devoted to negotiating plea agreements are not explicitly excluded from calculation, but such delays may be excluded if the district court determines that "the ends of justice served by [granting a continuance and excluding the time from calculation] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

When more than seventy non-excluded days have passed, the Act requires dismissal of an affected indictment on motion by the defendant. 18 U.S.C. § 3162(a)(2). While dismissal of the indictment is mandatory, the district court

5

retains discretion to determine whether the indictment is dismissed with or without prejudice. *Id.* In determining whether to dismiss with or without prejudice, the court

> shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

*Id.* The Supreme Court has indicated that prejudice to the defendant occasioned by the delay should also be considered in determining whether to dismiss an indictment with or without prejudice. *See United States v. Taylor*, 487 U.S. 326, 333–34 (1988).

We review for abuse of discretion a district court's decision under the Speedy Trial Act to dismiss an indictment without prejudice. *United States v. Jones*, 213 F.3d 1253, 1256 (10th Cir. 2000). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337.

The district court in Mr. Cano-Silva's case considered each of the required factors and held that dismissal without prejudice was the appropriate remedy for the Speedy Trial Act violation. Mr. Cano-Silva does not strenuously dispute the district court's determination that three of the four factors support dismissal without prejudice. Mr. Cano-Silva concedes, for instance, that the crime with

6

which he was charged is a serious one. He makes only a perfunctory objection to the district court's conclusion that the administration of justice is best served by a dismissal without prejudice, suggesting that a dismissal with prejudice "would send a strong message that . . . the government should be aware of the demands of the Speedy Trial Act." Aplt's Br. 17. As we have had occasion to point out before, the Speedy Trial Act provides for two varieties of penalties, both of which give the government incentives to avoid violations. *See Jones*, 213 F.3d at 1257. While dismissal with prejudice is obviously the more severe sanction, a dismissal without prejudice still requires re-indictment, may expose the government to statute of limitations difficulties, and generally makes prosecution less likely. *See id.* The fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations. Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation.

Mr. Cano-Silva has also failed to demonstrate that he was so prejudiced by the delay as to warrant the dismissal of his case with prejudice. Mr. Cano-Silvo compares his situation to that of the defendant in *United States v. Saltzman*, 984 F.2d 1087 (10th Cir. 1993), observing that the delay in his case was longer and that Mr. Saltzman's trial was delayed by negotiations that culminated in a favorable plea agreement, whereas he ultimately received a longer sentence than

the plea bargain he rejected. This comparison is unpersuasive. While the length of the delay in Mr. Cano-Silva's case is not insignificant, neither is it dispositive. *See Jones*, 213 F. 3d at 1258 (holding that a delay of 414 non-excludable days did not require dismissal with prejudice). The chief appeal of plea agreements for defendants is that a plea bargain presumably will result in a shorter sentence than a sentence following a conviction; having fired one lawyer who negotiated a favorable plea agreement and declined to follow the advice of another during trial, Mr. Cano-Silva can hardly complain that his sentence was longer than that offered in the plea agreement. The acceptance of responsibility, both inside and outside the United States Sentencing Guidelines, will likely result in a shorter sentence than will a dogged insistence that the government prove its case to a jury. A finding that a delay produced a benefit for a defendant will certainly diminish the likelihood that prejudice will be found, but we did not in *Saltzman* articulate a rule that delays are prejudicial unless beneficial.

Mr. Cano-Silva devotes the greater part of his discussion of the § 3162 factors to the facts and circumstances leading to the dismissal. In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay. *Saltzman*, 984 F.2d at 1093. If the violation is the result of "intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate

8

remedy." *Id*. at 1093–94. The district court found that the Speedy Trial Act violation was the result of the "inadvertence of both parties and not [of] any deliberate attempt by the government to manipulate the proceedings or any pattern of dilatory conduct or neglect by the government." Order of Dismissal 4. Although conceding that the violation was not deliberate, Mr. Cano-Silva maintains that it was nevertheless the product of culpable neglect by the government, sufficient to warrant dismissal with prejudice.

In support of this assertion, Mr. Cano-Silva offers the facts that, while the violation was ongoing, the government filed a notice of its compliance with discovery requirements, defense counsel observed in a motion to withdraw that a trial date had not yet been set, and the court appointed new counsel. Mr. Cano-Silva argues that the fact the government attended to some aspects of his case—such as filing its notice of compliance with discovery requirements—somehow makes more culpable the neglect of its Speedy Trial Act obligations. But it is unclear why this should be the case. Indeed, the fact that the government continued to make other required filings tends to support the district court's conclusion that the government believed that defense counsel had attended to the motion to exclude time. Whenever a Speedy Trial Act violation takes place, it is very likely that the government has made a mistake of some sort; in order to secure a dismissal with prejudice a defendant must do more than point

9

to that mistake with rising indignation.

Mr. Cano-Silva's suggestion that the district court and the government should have responded to the withdrawing defense counsel's "reminder" that a trial date had not yet been set is equally misplaced. Under local rules, the ease or difficulty with which a lawyer may extricate himself from a case depends, in large measure, upon whether a trial date has or has not been set. *See* DUCivR 83-1.4(a)(3); DUCrimR 57-12. A reference to a trial date in a motion to withdraw is likely to be intended and taken as an attempt to invoke the more relaxed rules that apply before a trial date has been set, rather than a Cassandra-like prophecy of a coming Speedy Trial Act violation.

Mr. Cano-Silva also testified at his sentencing hearing, and maintains on appeal, that he was unaware of his rights under the Act and did not knowingly acquiesce in the delay. In opposition to Mr. Cano-Silva's testimony, the government produced a letter from Mr. Cano-Silva's first attorney indicating that he had informed Mr. Cano-Silva of his rights under the Speedy Trial Act and that Mr. Cano-Silva agreed to waive those rights in order to pursue plea negotiations. The district court declined to resolve this question, observing at the hearing that the dispute could be addressed more appropriately by means other than the mechanism of the Speedy Trial Act. Mr. Cano-Silva insists that ignorance of his rights, coupled with the failure of the government and the district court to hold a

10

hearing to ensure his waiver of his rights was intentional and intelligent, entitles him to a dismissal with prejudice.

There are two significant difficulties with Mr. Cano-Silva's theory. First, neither statute nor precedent requires us to consider whether Mr. Cano-Silva knowingly waived his speedy trial rights. Such a requirement is not included in the factors enumerated in the Act and it has not been added by the Supreme Court. Despite Mr. Cano-Silva's suggestion to the contrary, this Court has not added the requirement that a defendant's acquiescence in a delay be acknowledged in open court in order to be acceptable. In *Saltzman* we disagreed with the district court's finding that the defendant's waiver of his right to a speedy indictment was unknowing, citing as support for our conclusion the fact that the defendant acknowledged his rights and waived them in a hearing. 984 F.2d at 1093. We did not hold that a failure to hold a hearing in order to determine that a waiver was knowing is a circumstance requiring, or even tending toward, dismissal with prejudice. Indeed, Mr. Cano-Silva's argument creates a difficulty to which we alluded in *Saltzman*, that a defendant might wait passively for the Speedy Trial Act time to run, or even actively contribute to the delay, and then demand a dismissal with prejudice. *See id*. at 1094. If a defendant has merely to assert that he did not know of his rights under the Act in order to secure a dismissal with prejudice, criminal defendants would have every incentive to wait passively

11

whenever there is the prospect of a violation. The creation of such an incentive would in no way promote the Act's twin goals of protecting the rights of the public and criminal defendants to the prompt resolution of criminal proceedings.

The second problem with Mr. Cano-Silva's argument is that his solution—requiring district courts to hold hearings to ensure intentional and intelligent waiver—is both administratively unworkable and largely ineffectual. As the district court observed, the government's "contact with defendant was limited properly to negotiations with defense counsel." Order of Dismissal 4. Neither prosecutors nor trial courts can be expected to call for a hearing to ensure that every tactical decision communicated by defense counsel has been approved by the defendant. To attach such a requirement to every request for a continuance and exclusion of time would add significantly to district courts' burdens, exacerbating delays rather than reducing them. Nor would such a procedure have been of any assistance in avoiding the violation of which Mr. Cano-Silva complains. Counsel for both parties and the court were unaware that a violation was in the making; a procedure requiring a hearing with each motion is of no use in a situation in which everyone involved assumes someone else has taken responsibility for the motion and then forgets about it.

The district court properly considered the factors required by precedent and statute and appropriately dismissed the indictment without prejudice.

12

*B. Minor-Participant Adjustment*

After the dismissal of the indictment against Mr. Cano-Silva without prejudice, the government promptly re-indicted him, and he was convicted with almost equal promptness at the conclusion of a jury trial. The presentence report (PSR) recommended a two-point enhancement for obstruction of justice based on Mr. Cano-Silva's apparent perjury at trial. The PSR further concluded that Mr. Cano-Silva had, upon Mr. Padilla's transfer to California, taken over Mr. Padilla's drug distribution activities in Utah. Mr. Cano-Silva nevertheless moved for a two-point minor-participant adjustment. The government moved for the two-point obstruction enhancement and opposed the minor-participant adjustment. In light of the roughly thirteen pounds of cocaine and methamphetamine found in his car, Mr. Cano-Silva's base offense level was determined to be thirty-eight.[3] The trial court denied the government's motion for an enhancement and found Mr. Cano-Silva to have been a minor participant, reducing his offense level to thirty-

---

[3] The indictment against Mr. Cano-Silva charged him with possession with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture containing detectable amounts of cocaine. The government concedes that Mr. Cano-Silva's sentence was "enhanced based on the fact that he possessed more than 1.5 kilograms of actual methamphetamine." Supp. Br. at 4. Mr. Cano-Silva, however, appears to believe that his case presents no obvious *Booker* issues: "Mr. Cano-Silva's case does not involve a Sixth Amendment violation." Aplt. 28(j) Letter, Feb. 8, 2005. We need not reach the *Booker* issue attendant upon the difference between facts found by the jury and the judge, as we have determined that the case requires a remand for re-sentencing in any event.

six.  A base offense level of thirty-six, combined with Mr. Cano-Silva's criminal history category of two, produces a sentencing range of 210 to 262 months.  Mr. Cano-Silva was sentenced to 210 months' imprisonment, the shortest sentence permissible under the then-mandatory Guidelines.

On appeal, the government renews its contention that there was inadequate evidence to support the district court's finding that Mr. Cano-Silva was a minor participant for the purposes of a two-level reduction under the Guidelines.  *See* U.S.S.G. § 3B1.2.  Mr. Cano-Silva had the burden of demonstrating his entitlement to a minor-participant reduction by a preponderance of the evidence. *United States v. Chavez*, 229 F.3d 946, 956 (10th Cir. 2000).  The government argues, with some justification, that Mr. Cano-Silva failed to meet this burden and that the evidence pointed to a more significant role.  In addition, the government points to indications in the sentencing transcript that the district judge made the minor-participant adjustment because of a desire to shorten what he regarded as an excessive sentence.  For example, when the government pressed the point that the evidence did not support the adjustment, the district judge expressed reservations about the fit between the sentence the Guidelines required and Mr. Cano-Silva's deserts:

> This is a difference between 210 and 262 months on the low end of the range [for a base offense level of 36 and 38, respectively].  Does the government really think that Mr. Cano-Silva deserves 262 months?  I think that is something

14

like . . . 23 years or something like that, an extra four years
that we're talking about here is going to cost the government
in excess of $100,000. Is that the best use of the government's
resources[?]

Rec. Vol. VII at 14.

But we need not resolve the merits of the minor-participant adjustment. In their briefs, both parties agree that the district court committed a different sentencing error, which went unnoticed at the time of sentencing. Several months before Mr. Cano-Silva's sentencing, a change in the Guidelines provided that the base offense level for a defendant granted a minor-participant adjustment on drug charges can be no higher than thirty. U.S.S.G. § 2D1.1(a)(3) (Effective Nov. 1, 2002) U.S.S.G. App. C, Amend. 640. Mr. Cano-Silva was given a minor-participant adjustment but sentenced at a base offense level of 36. That violated the revised Guideline.

Mr. Cano-Silva did not challenge the district court's determination of the base offense level at sentencing; however, the government concedes that the error was plain. "Therefore, even though Cano-Silva did not raise this issue below, he will need to be resentenced on remand . . . if this Court affirms the district court's minor-participant finding." U.S. Br. at 14. It is therefore unnecessary for us to engage in the usual four-part plain error analysis. *See United States v. Hurlich*, 348 F.3d 1219, 1220 (10th Cir. 2003).

Accordingly, whether or not the district court erred in granting the minor-

15

participant adjustment, the sentence itself was erroneous. Either the court erred in granting the minor participant adjustment or, if not, it erred in failing to cap the base offense level at thirty. Either way, the sentence must be vacated and the case remanded for resentencing.

The resentencing proceeding, of course, must be conducted in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Under *Booker*, the Sentencing Guidelines are no longer mandatory, and the district judge will be free to determine whether the defendant is eligible for a minor-participant adjustment without any concern that the result would compel what the judge considers an unwarranted sentence. On remand, the district judge shall determine anew whether or not Mr. Cano-Silva was a minor participant under the Guidelines, and then "take account of the Guidelines together with other sentencing goals" in imposing his sentence. *Booker*, 125 S. Ct. at 764.

Mr. Cano-Silva filed supplemental briefing arguing that the decision of the United States Supreme Court in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), rendered the Guidelines unconstitutional in their entirety. Mr. Cano-Silva accordingly requested remand for discretionary sentencing within the statutory range. We need not reach any issues connected to *Blakely* or *Booker*, since we have already determined that the case must be remanded for re-sentencing. We therefore deny the motion to file supplemental briefs.

16

*III. Conclusion*

The district court properly considered the factors required by statute and Supreme Court precedent in dismissing the first indictment against Mr. Cano-Silva without prejudice. The dismissal without prejudice is therefore AFFIRMED. The district court's determination of Mr. Cano-Silva's base offense level under the United States Sentencing Guidelines, however, was erroneous and requires remand for re-sentencing. Mr. Cano-Silva's sentence is accordingly VACATED and his case is REMANDED for proceedings consistent with this opinion.