**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**January 21, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

CLAUD R. KOERBER,

     Defendant - Appellee.

No. 14-4107

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:09-CR-00302-CW-1)**
_____

Dave Backman, Assistant United States Attorney (Carlie Christensen, United States Attorney, with him on the briefs) District of Utah, Salt Lake City, Utah, for Plaintiff-Appellant.

Marcus R. Mumford, Mumford PC, Salt Lake City, Utah, for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

In May 2009, a federal grand jury indicted Claud Koerber on one count each of mail fraud, wire fraud, and tax evasion. In November 2009 and September 2011, the grand jury returned two additional superseding indictments, ultimately charging Koerber with 20 counts related to his alleged Ponzi scheme. All told, Koerber's case

remained pending for more than five years without ever reaching trial. In August 2014, on Koerber's motion, the district court found a violation of the Speedy Trial Act (STA), 18 U.S.C. §§ 3161–3174, which requires the government to commence trial within 70 days (not counting time excluded under § 3161(h)) "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). After finding an STA violation, the district court exercised its discretion under § 3162(a)(2) and dismissed Koerber's case with prejudice.

The government appeals. It contends that the district court abused its discretion in dismissing the case *with* prejudice. Although we disagree with most of the government's arguments, we conclude that the district court abused its discretion in two respects: (1) by including improper factors in its consideration of the seriousness-of-the-offense factor, and (2) by failing to fully consider Koerber's own actions that may have contributed to the speedy-trial delay.

Exercising jurisdiction under 18 U.S.C. § 3731 and 28 U.S.C. § 1291, we reverse the district court's order dismissing the case with prejudice, and we remand for reconsideration in accordance with our opinion.

## BACKGROUND

Both Koerber and the government agree that trial did not commence within the STA's 70-day time limit. In focusing on whether the district court properly dismissed the indictment with prejudice, we now summarize the lengthy proceedings,

highlighting events that led to the STA violation and to nearly five years passing without trial commencing.

## I.    May–December 2009: The First Indictment and Discovery

By late 2007, the government[1] had begun investigating Koerber for operating a Ponzi scheme. The government alleged that, through his companies, Koerber had made presentations to investors inducing them to pour money into his companies by promising monthly returns between one and five percent. As alleged, Koerber did not invest the money at all. Instead, Koerber purportedly used funds obtained from new investors to satisfy his obligations to earlier investors and spent most of the investment funds for his own purposes: among other expenditures, Koerber spent $850,000 buying restaurants, over $1,000,000 buying cars, about $5,000,000 making a movie, and about $425,000 minting coins. The grand jury charged that investors ultimately lost more than $50,000,000.

In February 2009, three months before seeking an indictment, federal prosecutors authorized IRS Agent Ronald Marker and FBI Agent Cameron Saxey to interview Koerber twice. By this point, according to the district court, the government knew that Koerber had retained counsel but still scheduled Koerber's interviews without even notifying his counsel. The two federal agents acted at the prosecutors' behest as follows:

> In the second interview, the agents posed half a dozen scripted questions
> provided by the prosecutors, including questions designed to induce

---

[1] In 2005, the State of Utah began investigating Koerber. In 2007, it began coordinating its investigation with the IRS and the United States Attorney's Office.

[Koerber], who was the target of their investigation and whom prosecutors intended to indict, to waive attorney-client privilege and to reveal potential trial strategy such as whether he intended to rely on an "advice of counsel" defense at trial, though he was as yet unindicted.

Appellant's App. vol. I at 257.

On May 26, 2009, a federal grand jury indicted Koerber on three counts—mail fraud, wire fraud, and tax evasion. At Koerber's June 19, 2009 arraignment, the district court[2] briefly addressed the STA calculations (without specifically addressing any of its provisions), directing that "[a]ll time is to be excluded pursuant to the [STA], [Assistant United States Attorney (AUSA) Stewart] Walz to prepare an order."[3] *Id.* at 6. AUSA Walz never did.

Unsurprisingly, in an alleged $50,000,000 fraud case, discovery was voluminous. According to the government, by August 2009 it believed that it had provided "approximately 95%" of its discovery to Koerber. *Id.* at 70. But later that month, the State of Utah provided the government an additional 20 boxes of discovery from its investigation—containing thousands of pages of documents— together with "a significant number of additional witness interviews and related documents" that the government intended to review and scan onto discs for Koerber. *Id.* at 71. Based on the government's need to evaluate and provide the additional discovery to Koerber, and on Koerber's need for time to study it, the government and

---

[2] Magistrate Judge Samuel Alba presided at Koerber's initial arraignment. District Judge Ted Stewart was first assigned the case.

[3] In several of its minute orders, the district court did not state what specific time it wanted excluded, instead referring generally to "all time." *E.g.*, Appellant's App. vol. I at 6, 8, 25. We reference the exact times when the district court specified exact times.

4

Koerber filed a joint motion to continue a status conference scheduled for August 31, 2009. The district court[4] granted the motion and ordered the time excluded under 18 U.S.C. § 3161(h)(7)(A) and (B) but made no express ends-of-justice findings as § 3161(h)(7)(A) requires.

On October 23, 2009, at a status conference, the magistrate judge[5] stated that "[a]ll time is to be excluded pursuant to the [STA]. [AUSA] Walz to prepare an order." Appellant's App. vol. I at 7. Unexplainably, the government failed to prepare this order for nearly two months, keeping the district court from entering it until December 14, 2009. When finally filed, the order purported to exclude the "period of time between October 23, 2009 and the 19th day of January, 2010," under the ends-of-justice provision of the STA, 18 U.S.C. § 3161(h)(7)(A), citing four reasons: (1) the case involved "voluminous" discovery; (2) the government was still copying the 20 boxes of material for Koerber; (3) "the case is complex"; and (4) Koerber had just retained new counsel. *Id.* at 93–94. But the order did not set forth "reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *see United States v. Toombs*, 574 F.3d 1262, 1270–72 (10th Cir. 2009) (stating that conclusory reasons for ends-of-justice continuances are inadequate).

## II. January–September 2010: Koerber's Protective-Order Motion

---

[4] Magistrate Judge Alba considered and granted the motion.
[5] Magistrate Judge Alba presided at this status conference.

On January 27, 2010, the district court[6] held a status conference to discuss discovery. In a minute entry on the docket, the district court stated that "[a]ll time is to be excluded pursuant to the [STA]. [AUSA] Walz to prepare an order." Appellant's App. vol. I at 8–9. The district court did not say what days it intended to exclude from the speedy-trial clock. On February 17, 2010, the district court entered the order, which included ends-of-justice findings, noting that "the amount of discovery in this case necessitates this continuance for this period of time which renders this case so complex that the ends of justice outweigh the best interest of the defendant and the public in a speedy trial." *Id.* at 188. Because the district court had not mentioned the ends-of-justice findings at the January 27, 2010 hearing, the findings necessarily were retroactive.

Also in February 2010, Koerber filed a motion for a protective order, seeking to require the government to return to him privileged documents contained within about 200,000 pages of documents he produced to comply with a 2007 IRS subpoena. Koerber alleged that, until October 2009, the government had delayed notifying him of his inadvertent disclosure and had even used some of the privileged information to help secure at least one count in the superseding indictment.

On August 31, 2010, before ruling on Koerber's motion, the district court[7] held a status conference,[8] again ordering "[t]he time" excluded under the STA and

---

[6] Magistrate Judge Alba presided at this status conference and entered the related February 17, 2010 order.

[7] Magistrate Judge Alba presided at this status conference and later entered the September 21, 2010 order.

directing the government to prepare an order. *Id.* at 14–15. On September 15, 2010, the district court partially granted Koerber's protective-order motion, ordering discovery about the government's alleged intrusions into Koerber's privileged information. On September 21, 2010, the district court entered that order (based on the August 31, 2010 hearing) excluding time under the STA, 18 U.S.C. § 3161(h)(7)(A), after finding "that the ends of justice outweigh the best interests of [Koerber] and the public in a speedy trial" based on the voluminous discovery and Koerber's need to evaluate the discovery to determine what motions he may need to file. Appellant's App. vol. I at 192. The district court had not fully articulated those findings at the status conference, having stated only that it "want[ed] the time excluded under the [STA] and the reason for it is that the defense still needs time to prepare the motions and to file them by that time." Appellant's App. vol. III at 725–26.

### III.    October 2010–August 2011: Koerber's Protective Order

On October 22, 2010, the government filed a motion asking for a trial setting. We see nothing in the appendix showing that the district court ever acted on the government's motion. On November 16, 2010, at another status conference, the district court[9] invited Koerber to seek a continuance of the pretrial-motions deadline until all issues related to his inadvertent disclosure were completely resolved. On December 15, 2010, the motions deadline, Koerber filed a motion to continue that

---

[8] The government had asked in June 2010 for a status conference "to ascertain when this matter may be tried." Appellant's App. vol. I at 189.

[9] District Judge Clark Waddoups presided at this hearing.

deadline, saying he needed more time to review the discovery and to try to resolve the privileged-information issue. Without citing to any portion of the STA governing excludable time, the district court[10] granted Koerber's motion to continue "pending further notice." Appellant's App. vol. I at 198.

During the first half of 2011, Koerber sought to learn more about what he called the government's intrusions into his privileged information. In June 2011, the district court resolved the privileged-information issue by granting a protective order requiring the government to return any hard copies of various privileged documents and to destroy the electronic versions of those documents.

In July 2011, the government filed another motion asking the district court to set a status conference, a motions deadline, and a trial date. In response, the district court scheduled a status conference for July 27, 2011, which it later continued to August 2, 2011. At the status conference, the government informed the district court that it intended to seek a second superseding indictment within the next 30 to 60 days.[11] With this in mind, the district court[12] set another status conference for October 7, 2011, and ordered "that all time is to be excluded pursuant to the [STA]." *Id.* at 25. The district court directed the government to prepare an order, which the district court then entered on August 22, 2011. Without listing any ends-of-justice

---

[10] Judge Waddoups entered this order.

[11] The government filed a first superseding indictment on November 10, 2009, that charged Koerber with additional counts related to the Ponzi scheme. The second superseding indictment added no new charges from the first, so the STA clock did not restart. *See United States v. Mora*, 135 F.3d 1351, 1355 (10th Cir. 1998).

[12] Magistrate Judge Alba presided at the August 2, 2011 status conference and entered the related August 22, 2011 order.

reasons, the order excluded from the STA calculation the period between August 2 and October 7, 2011, under "18 U.S.C. § 3161(h)(7)(A) and (B) from the time within which the trial of this case must commence pursuant to 18 U.S.C. § 3161." *Id.* at 202.

## IV. September 2011–April 2012: The Second Superseding Indictment

On September 29, 2011, the government obtained a second superseding indictment against Koerber. This time, the grand jury charged Koerber with six counts of fraud in the offer and sale of securities, in violation of 15 U.S.C. §§ 77q(a) and 77x; ten counts of wire fraud, in violation of 18 U.S.C. § 1343; two counts of money laundering, in violation of 18 U.S.C. § 1957; and two counts of tax evasion, in violation of 26 U.S.C. § 7201. The district court scheduled an arraignment (along with a status conference) for October 7, 2011, but Koerber had a health emergency that required the district court to vacate those settings. The district court continued the arraignment until January 10, 2012. On October 28, 2011, the government moved for a status conference, arguing that, despite the lack of an arraignment, the district court should set motions deadlines and a trial date because the STA clock did not restart for 70 additional days upon the filing of a superseding indictment.

On November 15, 2011, the district court[13] held a status conference, setting a December 30, 2011 motions deadline and stating that "[a]ll time is to be excluded pursuant to the [STA]. [AUSA Patricia] Glenn to prepare an order." Appellant's App. vol. I at 26. From the appendix, we see nothing indicating that AUSA Glenn ever

---

[13] Magistrate Judge Alba presided at this status conference.

9

prepared that order. The appendix does show that the district court never entered the order.

On December 30, the latest motions deadline, Koerber moved for an eight-week extension so that he could complete motions and resolve discovery disputes. The government objected, but stated that it would not object to a two-week extension. The district court granted Koerber a two-week extension. Between January and April 2012, notwithstanding the district court's deadline, Koerber filed multiple motions, including a motion to compel discovery and a motion to dismiss 12 counts of the second superseding indictment (on statute-of-limitations grounds).

## V.    April 2012–August 2013: The Motion to Suppress

On April 13, 2012, Koerber moved the district court to suppress his statements made during his two February 2009 interviews with federal agents, as well as any evidence derived from those statements. Koerber argued that the government had violated his rights by interviewing him ex parte despite knowing that he had retained counsel.

On April 27, 2012, two weeks after Koerber's motion, the government again requested a trial date. On May 1, 2012, citing 18 U.S.C. § 3161(h)(7)(A) and (B), the district court[14] entered an order excluding from the STA calculation all time "between March 30, 2012, and the eventual trial date." Appellant's App. vol. I at 244. As reasons justifying the excluded time, the order merely stated that "the complexity of the case, the remaining issues to be resolved . . . , [and] the amount of

_____

[14] Magistrate Judge Alba entered this order.

10

discovery, establishes that the best interest of [Koerber] and the public in the speedy trial are outweighed by the need for the continuance." *Id.*; *see Toombs*, 574 F.3d at 1270–72.

## VI. August 2013–April 2014: The Granted Motion and the Government's Aborted Appeal

On August 20, 2013, the district court granted Koerber's motion to suppress the statements he had made during his February 2009 interviews "and all fruits derived therefrom." Appellant's App. vol. I at 306. The district court later explained its rationale for suppression on grounds that the interviews "provided prosecutors with a roadmap of whom to interview and what documents to obtain and focus on." Appellant's App. vol. II at 636–37.

On August 27, 2013, upon the government's request, the district court[15] held another status conference. The government argued that the case was still within the 70-day STA limit, and it requested a trial date. In response, Koerber merely stated that he was not prepared to discuss a trial date or any potential speedy-trial issues. The district court set yet another motions deadline, a final pretrial conference, and a trial date. Without announcing any ends-of-justice reasons, the district court stated that it "would ask the United States [to] prepare an order that satisfies the requirements of the Tenth Circuit to toll the [STA] between now and the time of trial." Appellant's App. vol. III at 918. In its minute order, the district court ordered

---

[15] Judge Waddoups presided at this status conference.

that "[s]peedy trial time is to be tolled until the trial date. The government is to prepare the order tolling that time." Appellant's App. vol. I at 45.

The government did not provide the district court that order. Instead, on September 13, 2013, the government appealed the district court's suppression order. On November 1, 2013, Koerber moved to continue the motions deadline based on the government's appeal. The district court granted that motion and also vacated the final pretrial conference and trial setting.

In February 2014, the government moved to dismiss its appeal. It turned out that the government had failed to obtain the Solicitor General's authorization before appealing the suppression ruling. *See* 28 C.F.R. § 0.20(b) (stating that the Solicitor General determines "whether, and to what extent, appeals will be taken by the Government to all appellate courts"). We granted the government's motion and dismissed the appeal.

After the dismissal, the government moved the district court to reconsider its suppression ruling. It offered no reasons for reconsideration, but simply asked the district court for an opportunity to further brief the issues. The government also requested a status conference and another trial setting.

On March 28, 2014, the district court held a status conference where Koerber stated that he would file a motion to dismiss based on an STA violation and a Sixth Amendment speedy-trial violation. The district court asked Koerber if he "want[ed] to start trial on June 13[, 2014]"; Koerber responded that his "first reaction . . . is to ask the court . . . why a trial here given the motions that we have"—presumably

12

referring to his impending STA-dismissal motion. Appellant's App. vol. III at 969. The district court stated that it wanted to set a trial date to better plan for a final motions deadline. The district court orally denied the government's reconsideration motion and stated that "I'm not tolling the [STA], I'm not making any decisions as to the [STA] today." *Id.* at 971.

On March 31, 2014, the district court entered its order denying the government's motion to reconsider its suppression ruling. On April 3, 2014, after the district court's denial order, the government moved the district court to enter an order excluding time "based on the record of the case and the hearing on March 28, 2014." Appellant's App. vol. I at 326. The district court never acted upon that motion.

## VII. Koerber's Motion to Dismiss for an STA Violation

On April 23, 2014,[16] Koerber moved to dismiss based on an STA violation and a Sixth Amendment speedy-trial violation. He argued that the five-year delay was "directly attributable to the government's actions." Appellant's App. vol. II at 332. After the district court signaled its intent to declare an STA violation, the parties turned their attention to whether the dismissal should be with or without prejudice. *See* 18 U.S.C. § 3162(a)(2). Applying the § 3162(a)(2) factors, the government argued that Koerber's Ponzi scheme was "unquestionably a serious offense" and that Koerber, not the government, had delayed progress toward trial. Appellant's App. vol. II at 456. In response, although conceding that his charged offenses were serious,

---

[16] The district court granted Koerber two continuances from the original April 14, 2014 deadline to file this motion.

Koerber argued that the government had engaged in a pattern of neglect that would render reprosecution unfair and erode the public's faith in the even-handed administration of justice.

On April 23, 2014, the district court discussed with the parties the potential STA violation and dismissal. On May 1, 2014, the government informed the district court that it had produced an additional 1,400 pages of supplemental discovery. The district court noted that "[m]ost of the evidence was between one and four years old, and clearly has been in the government's possession for a long time." *Id.* at 633 (internal quotation marks omitted). It found the government's disclosure "curious considering the Government's awareness that this case must be dismissed under the STA . . . ." *Id.*

The district court[17] dismissed Koerber's case *with* prejudice. Among other factors, it considered the three factors Congress has listed in 18 U.S.C. § 3162(a)(2): (1) the seriousness of the offense; (2) the facts and circumstances of the case that led to dismissal; and (3) the impact of a reprosecution on the administration of the STA and on the administration of justice.

For the seriousness-of-the-offense factor, the district court noted that both parties agreed (and the court accepted) that Koerber's charged offenses were indeed serious. But, without citing any authority allowing it to do so, the district court then considered in the seriousness-of-the-offense inquiry two unrelated factors: (1) the

---

[17] Judge Waddoups heard argument on the STA violation and entered the order dismissing with prejudice.

14

"presumption of innocence," and (2) "the significant problems relating to the indefiniteness of the information contained in the indictments." Appellant's App. vol. II at 625. The district court also stated that "the Government's actual problematic conduct in prosecuting this case (as observed by the court in several previous Orders) should be a relevant consideration in considering both the seriousness of its allegations against [Koerber] and the actual and presumed prejudice caused to [Koerber], as discussed below." *Id.*

For the facts-and-circumstances factor, the district court concluded that Koerber had established

> beyond question that the Government and the court have together failed "to protect the speedy trial rights of both the defendant and society" in this case by entering at least eight ends-of-justice Orders/purported continuances that fall far short of complying with the relevant statutory and precedential requirements for valid ends-of-justice findings.

*Id.* at 626 (quoting *United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993)). The district court noted that the deficient orders (when orders were even filed) had not paused the STA clock, and were "symptomatic of the Government's pattern of neglect and dilatory conduct in managing the STA clock in this case." *Id.* at 627. According to the district court, the delay in Koerber's case resulted from "intentional dilatory conduct, or a pattern of neglect on the part of the Government," such that "dismissal with prejudice is the appropriate remedy." *Id.* at 630 (quoting *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009)). The district court also relied on other actions the government had taken in the case, including the government's "puzzling" discovery practice, *id.* at 633, and its "tactic of illegally

15

planning and conducting impermissible *ex-parte* interviews with [Koerber] in February 2009 . . . ," *id.* at 634.

For the impact-on-reprosecution factor, the district court concluded that the court could not allow reprosecution. It stated that "prejudice is presumed," *id.* at 636 (quoting *Shillinger v. Haworth*, 70 F.3d 1132, 1141 (10th Cir. 1995)), because the facts and circumstances here "undermine[d] [Koerber's] possibility of receiving a fair trial," *id.* It also found that Koerber had suffered prejudice, including the government's losing 27 discs of critical information, and the impairment of witnesses' memories. The district court also noted the "protracted nature of the case" and the length of the delay as factors supporting dismissal with prejudice.[18] *Id.* at 635 n.7. The government timely appealed under 18 U.S.C. § 3731.

## DISCUSSION

## I. The Speedy Trial Act

Here, to comply with the STA, Koerber's trial needed to commence within 70 days (not counting excludable time under the STA) from the later of (1) "the filing date (and making public)" of his indictment, or (2) the date he "appeared before a judicial officer of the court in which [his] charge [was] pending." 18 U.S.C. § 3161(c)(1). If trial does not commence within this time limit, the district court must dismiss the indictment upon the defendant's motion. *Id.* § 3162(a)(2). "While dismissal of the indictment is mandatory, the district court retains discretion to

---

[18] Because the district court dismissed with prejudice based on the STA violation, it did not reach Koerber's alternative basis for dismissal—a Sixth Amendment speedy-trial violation.

16

determine whether the indictment is dismissed with or without prejudice." *United States v. Cano-Silva*, 402 F.3d 1031, 1034 (10th Cir. 2005).

The STA provides:

> In determining whether to dismiss [a] case with or without prejudice, [a] court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). "Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider." *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006) (quoting *United States v. Taylor*, 487 U.S. 326, 334 (1988)). "[T]he application of the more severe sanction of dismissal with prejudice . . . should be reserved for more egregious [STA] violations." *Cano-Silva*, 402 F.3d at 1035.

## II.     Standard of Review

We review a dismissal with prejudice for an abuse of discretion. *See Taylor*, 487 U.S. at 335–36; *Abdush-Shakur*, 465 F.3d at 462 ("Nevertheless, the district court retains broad discretion whether to dismiss the indictment with or without prejudice."). "Factual findings of a district court are, of course, entitled to substantial deference and will be reversed only for clear error." *Taylor*, 487 U.S. at 337. "Because 'Congress has declared that a decision will be governed by consideration of particular factors,' appellate review is limited to ascertaining 'whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy.'" *Saltzman*, 984 F.2d at 1092 (quoting *Taylor*, 487 U.S. at 336–37).

17

To permit meaningful appellate review, "[i]t is imperative for the district court . . . to 'carefully consider those factors as applied to the particular case and . . . clearly articulate their effect.'" *Id.* (quoting *Taylor*, 487 U.S. at 336) (second ellipsis in original). "Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress." *Taylor*, 487 U.S. at 337. "Although the role of an appellate court is not to substitute its judgment for that of the trial court, review must serve to ensure that the purposes of the [STA] . . . are given effect." *Id.* at 336. But "when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* at 337.

We consider in turn each of the three statutory factors as well as any resulting prejudice to Koerber and explain our conclusion that the district court abused its discretion in its analysis of the seriousness-of-the-offense factor and in part of its analysis of the facts-and-circumstances factor.

## III. Evaluation of the Factors

### A. *Seriousness of the Offense*

The seriousness of the offense is one factor a district court must consider in deciding whether to dismiss an indictment with or without prejudice for an STA violation. 18 U.S.C. § 3162(a)(2). "If the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice."

18

*Saltzman*, 984 F.2d at 1092–93. The government argues that the district court abused its discretion by cursorily declaring the charged offenses as serious without sufficiently weighing the factor in favor of dismissal without prejudice. The government also asserts that the district court slighted the seriousness-of-the-offense factor by weakening it with improper considerations of (1) the presumption of innocence, (2) the indictment's "indefiniteness," and (3) the government's "actual problematic conduct" in deciding whether the offense was serious. Appellant's Opening Br. at 31–32.

The district court (and Koerber himself) accepted "that the allegations against [Koerber] in this case are 'serious.'" Appellant's App. vol. II at 625. We agree with the district court and the parties that the charged offenses are serious.[19] Had the district court ended its discussion here, we would be hard-pressed to consider its analysis as slighting this factor. *See Saltzman*, 984 F.2d at 1092. But the district court did not, and we conclude that it abused its discretion by extending its analysis to consider the indictment's *allegations*, which are beyond what this factor measures: the seriousness of the charged offenses.

First, if the district court indeed considered the charged offenses serious, it failed to weigh that factor in favor of dismissing without prejudice. When a court

---

[19] We agree because Congress has provided considerable penalties for those offenses. *See* 15 U.S.C. § 77x (conviction for fraud in the offer and sale of securities mandates a prison term of not more than five years); 18 U.S.C. § 1343 (conviction for wire fraud mandates a prison term of not more than 30 years); 18 U.S.C. § 1957(b)(1) (penalty for money laundering includes prison term of not more than ten years); 26 U.S.C. § 7201 (penalty for tax evasion includes prison term of not more than five years).

"determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *Id.* at 1092–93. We do not see where the district court acknowledged that this factor favored a dismissal without prejudice, and we conclude that its failure to do so "slighted" this factor. *See id.* at 1092; *United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007) (concluding that the district court abused its discretion by undervaluing the offense's seriousness and "[n]eglecting to find that the first factor favored dismissal without prejudice").

Next, the district court should not have considered in its seriousness-of-the-offense analysis its view of the strength of the allegations against Koerber. The district court noted the indictment's "indefiniteness" and questioned whether the allegations could even withstand a motion to dismiss in a civil case. Appellant's App. vol. II at 625. The strength of the allegations and of the evidence against a defendant is irrelevant to this factor. *See* 18 U.S.C. § 3162(a)(2); *United States v. Becerra*, 435 F.3d 931, 936–37 (8th Cir. 2006). In *Becerra*, the defendant faced a drug-conspiracy charge and moved to dismiss the indictment for an STA violation. 435 F.3d at 933–34. In evaluating the seriousness of the offense, the district court noted that, although drug-conspiracy crimes are "generally serious," the government had failed to establish the seriousness of the offense because it "made no showing with respect to the strength of its case" or that "this defendant is either particularly dangerous or particularly involved in the conspiracy." *Id.* at 934. The Eighth Circuit reversed the district court's dismissal-with-prejudice decision and, in doing so, rejected the district court's framework for considering the offense's seriousness. *Id.* at 936. The

20

Eighth Circuit noted that the "text of [§ 3162(a)(2)] refers only to the seriousness of the offense charged in the indictment." *Id.* We agree with *Becerra*'s rationale. The district court's view of the strength of the allegations has no place in determining the seriousness of the offenses.

In addition, the district court should not have considered the presumption of innocence in determining whether the offense was serious. We certainly agree with the district court that the "seriousness of the Government's allegations against [Koerber] does not obviate his presumption of innocence . . . ." Appellant's App. vol. II at 625. But that legal truism is not relevant to the seriousness-of-the-offense factor—§ 3162(a)(2) requires a district court to consider only whether the charged offenses are serious. Koerber does not point us to a single case treating the presumption of innocence as a proper consideration in determining the seriousness of an offense. Instead, Koerber simply argues that "a 'defendant's lack of a conviction matters.'" Appellee's Br. at 35 (quoting *United States v. Neighbors*, 22 F. Supp. 3d 1158, 1167 (D. Kan. 2014)). But *Neighbors* addressed a violation of the constitutional right to a speedy trial, not an STA violation, and it considered a defendant's lack of a conviction in addressing prejudice.[20] 22 F. Supp. 3d at 1167.

---

[20] We have distinguished between a presumptively innocent defendant and a convicted defendant when considering prejudice to a defendant for a violation of the Sixth Amendment right to a speedy trial. *See United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012) (assessing prejudice in light of protecting constitutional speedy-trial rights by "preventing oppressive incarceration" but changing the "prejudice calculus . . . once a defendant has been convicted"). For STA claims, we have noted that "a court should consider the prejudice suffered by the defendant from the delay [in standing trial]." *Saltzman*, 984 F.2d at 1094. It is far from clear whether the

Section 3162(a)(2) does not tie the presumption of innocence to the seriousness of the offense, and the district court erred by doing so. *See Becerra*, 435 F.3d at 936 ("The text of the statute refers only to the seriousness of the offense charged in the indictment.").

Further, the district court considered the government's "actual problematic conduct" as a "relevant consideration in considering . . . the seriousness of its allegations against [Koerber] . . . ." Appellant's App. vol. II at 625. The district court erred by considering the government's conduct in the seriousness-of-the-offense analysis. Certainly, the district court may consider all of the government's problematic, delay-producing conduct when it considers the second factor (the facts and circumstances leading to dismissal). *See Taylor*, 487 U.S. at 339 (noting that "a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue"); *Saltzman*, 984 F.2d at 1093 (stating that "the court should focus 'on the culpability of the delay-producing conduct'" in considering the facts and circumstances leading to dismissal (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir.), *cert. denied*, 488 U.S. 925 (1988))). But the government's conduct is irrelevant to the seriousness of the charged offenses. *See* 18 U.S.C. § 3162(a)(2); *Becerra*, 435 F.3d at 936.

---

presumption of innocence is relevant in the STA-prejudice inquiry. *See United States v. Bert*, 801 F.3d 125, 135 (2d Cir. 2015) (considering not only actual prejudice, but also prejudice from an "[i]nordinate delay" that "may seriously interfere with the defendant's liberty, whether he is free on bail or not" (quoting *Taylor*, 487 U.S. at 340–41)).

Koerber contends that the district court's additional considerations do not amount to ignoring or slighting this factor. Koerber argues that, unlike in *Taylor*, the district court exercised its discretion in considering this factor, and that our court cannot "substitute its judgment for that of the trial court." Appellee's Br. at 34 (quoting *Taylor*, 487 U.S. at 336). In *Taylor*, the Supreme Court reversed a dismissal with prejudice because the district court "did not fully explicate its reasons for dismissing with prejudice," meaning the Court was left on appeal "to speculate in response to some of the parties' arguments pro and con." 487 U.S. at 337. Here, we acknowledge that the district court did at least explain its analysis used to measure the seriousness of the offense. But explaining a faulty analysis does not cure it. The district court strayed off-course by weighing the strength of the government's allegations instead of the seriousness of the charged offenses themselves.[21] *See United States v. Jones*, 213 F.3d 1253, 1257 (10th Cir. 2000) (considering the "seriousness of the charges").

---

[21] Koerber also argues that we should not make the seriousness-of-the-offense factor a "mechanical test" that considers only whether the offense was serious or not. Appellee's Br. at 36 (quoting *United States v. Pierce*, 17 F.3d 146, 149 (6th Cir. 1994)). But that is precisely what § 3162(a)(2) directs a court to consider. In *Pierce*, the district court evaluated the seriousness of the offense by discerning the applicable sentencing-guidelines range. 17 F.3d at 148–49. The Sixth Circuit stated that, "[w]hile a primary method of judging the seriousness of an offense is by comparing it to other crimes, that does not mean that a mechanical test based upon the [Sentencing] Guidelines must be used to label an offense 'serious' or 'not serious.'" *Id.* at 149. We disagree with using a Guidelines estimate (and spending valuable time resolving disputes about it) to measure an offense's seriousness; instead, the district court can use the length of sentence Congress has authorized for an offense as the measure of seriousness.

In analyzing this factor, a district court should consider only whether the charged offenses are serious. *See* 18 U.S.C. § 3162(a)(2). One way the district court can measure the seriousness of an offense is by considering the length of sentence Congress has adopted for that offense. *See, e.g.*, *United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000); *United States v. Koory*, 20 F.3d 844, 847 (8th Cir. 1994). And based on its previous conclusion and agreement with the parties that the charges are serious, the district court on remand should weigh that factor in favor of dismissing without prejudice.[22] *Saltzman*, 984 F.2d at 1092–93.

We emphasize that the seriousness of the offense is only one factor used to determine whether to dismiss an indictment with or without prejudice. Section 3162(a)(2) "requires the district court to balance the statutory factors" in deciding whether to dismiss an indictment with or without prejudice and commits the choice of sanction "to the sound discretion of the district court." *United States v. Derose*, 74 F.3d 1177, 1182 (11th Cir. 1996); *see United States v. Bert*, 801 F.3d 125, 131 (2d Cir. 2015) (stating that "[w]e will not lightly disturb 'the district court's judgment of how opposing considerations balance,' as long as all 'the statutory factors are properly considered'" (quoting *Taylor*, 487 U.S. at 337)). Thus, the district court may balance the seriousness-of-the-offense factor with the facts-and-circumstances factor. *See* 18 U.S.C. § 3162(a)(2); *Taylor*, 487 U.S. at 337.

---

[22] We recognize that a charged offense with a five-year maximum penalty would weigh less toward dismissal without prejudice than would a charged offense with a 30-year maximum penalty.

The district court may also balance the seriousness-of-the-offense factor with other specific facts, including (1) any resulting prejudice to a defendant from the delay, (2) the seriousness of the STA violation, and (3) the length of the delay. *See Saltzman*, 984 F.2d at 1093 ("When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice."); *Bert*, 801 F.3d at 131–32 (measuring the seriousness of the offense against the severity of the STA violation and against the length of delay).

B.      *Facts and Circumstances of the Case Leading to Dismissal*

"In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay." *Cano-Silva*, 402 F.3d at 1036. "[W]e have explained that where the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Williams*, 576 F.3d at 1158. Although we focus on the culpability of the conduct leading to delay, we are mindful that Congress mandated courts to consider "the facts and circumstances of the case *which led to the dismissal*," not just the facts and circumstances which led to delay. 18 U.S.C. § 3162(a)(2) (emphasis added); *see United States v. Kiszewski*, 877 F.2d 210, 213 (2d Cir. 1989) ("This language [of § 3162(a)(2)] is obviously broad and the listed factors, as the statute indicates, are not exclusive.").

25

The government argues that the district court relied only on what the government calls "limited facts" that do not support its pattern-of-neglect conclusion. Appellant's Opening Br. at 40. It contends that, contrary to the district court's position, the STA does not require a written order to exclude speedy-trial time, an order being "relatively insignificant" for this factor. *Id.* In addition, the government argues that the district court stated a "legally inaccurate" fact, *id.* at 42, when it found that the government had prepared "a faulty ends-of-justice order," Appellant's App. vol. II at 630. The government also contends that the district court lacked support when the district court condemned the government's "practice in at least two instances" "of filing one sentence or one paragraph motions . . . requesting . . . relief, apparently for the mere purpose of putting a motion on the record that could be a touchstone for excluding time under the STA." Appellant's App. vol. II at 632 n.5.

We disagree that the district court's findings are clearly erroneous, and we disagree that the district court erred in its legal conclusions. First, the district court properly considered as part of a "pattern of neglect" the government's "neglecting to prepare and submit to the court, at [the magistrate judge's] request, at least two ends-of-justice orders . . . resulting in the [lapse] of 70 unexcluded days . . . ." *Id.* at 630. We acknowledge that the STA permits a district court to grant a continuance "orally or in writing." 18 U.S.C. § 3161(h)(7)(A). But the STA requires a court to set forth "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.*

26

Here, the government twice failed to ensure that the court entered ends-of-justice orders. First, for the June 19, 2009 minute order, the district court simply stated that "[a]ll time is to be excluded pursuant to the [STA]" and "[AUSA] Walz to prepare an order." Appellant's App. vol. I at 6. Similarly, the district court stated in its November 15, 2011 minute order that "[a]ll time is to be excluded pursuant to the [STA]" and "[AUSA] Glenn to prepare an order." *Id.* at 26. On neither occasion did the government provide the district court a proposed order as directed.

Even if the government were correct that the district court had sufficient facts and reasons on the record to support the exclusion of time after the June 19, 2009 and November 15, 2011 hearings, the district court never set forth its reasons for an ends-of-justice finding. *See* 18 U.S.C. § 3161(h)(7)(A). And the government's failure to prepare the two referenced orders resulted in 70 unexcluded days counting against the STA clock, sufficient for an STA violation. *See* 18 U.S.C. § 3161(c)(1) (requiring a defendant's trial to commence within 70 days of the indictment's filing or the defendant's initial appearance). The district court did not clearly err in finding that the government's failure contributed to the speedy-trial delay, and it did not abuse its discretion in considering the government's failure to prepare the two STA orders as circumstances leading to dismissal.

Next, the district court did not clearly err by concluding that Koerber had "establishe[d] beyond question that the Government and the court have together failed 'to protect the speedy trial rights of both the defendant and society' by entering at least eight ends-of-justice Orders/purported continuances that fall far short of

27

complying with the relevant statutory and precedential requirements for valid ends-of-justice findings." Appellant's App. vol. II at 626 (quoting *Saltzman*, 984 F.2d at 1091). The district court noted that on two of the eight occasions, the government did not prepare an order—and as we have discussed, this failure was a part of the government's pattern of neglect.

For the remaining orders, the district court found that "[t]he deficiencies in these Orders resulted directly in the running of the STA clock" and were "symptomatic of the Government's pattern of neglect and dilatory conduct in managing the STA clock in this case." *Id.* at 627. The district court specifically highlighted the purported ends-of-justice order entered on December 14, 2009. As background, we note that the magistrate judge held a status hearing on October 23, 2009, and directed the government to prepare an order to exclude time from the STA. The government failed to provide the court with the requested order until December 14, 2009. The government argues that the order it prepared (and that the district court entered) sufficed under 18 U.S.C. § 3161(h)(7)(A). The district court disagreed, and so do we. At the October 23, 2009 hearing, the district court made none of the required ends-of-justice findings, instead merely stating that it "want[ed] the time excluded . . . under the [STA] based on new counsel coming into the matter" and "to allow [Mr. Mumford, who was new counsel at that time,] an opportunity to properly review the discovery on the case." Appellant's App. vol. III at 702.

This order was insufficient for two reasons. First, the district court cannot make retroactive findings after it grants an ends-of-justice continuance. *See United*

28

*States v. Larson*, 627 F.3d 1198, 1204 (10th Cir. 2010) ("These [ends-of-justice] findings may be entered on the record after the fact, but they may not be *made* after the fact." (emphasis in original)). Second, the district court never stated that it considered the required § 3161(h)(7)(B) factors.[23] "In determining whether to grant an ends-of-justice continuance, the district court must consider the factors listed in 18 U.S.C. § 3161(h)(7)(B)." *Banks*, 761 F.3d at 1175. "[T]he record must clearly establish [that] the district court considered the proper factors at the time such a continuance was granted." *Toombs*, 574 F.3d at 1269 (quoting *United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998)). The December 14, 2009 order does not address "the nature of the recently disclosed discovery, the relevance or importance of the discovery, or why the district court thought it proper to grant" a nearly three-month continuance. *Id.* at 1272. "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to

---

[23] The government's reliance on *United States v. Banks*, 761 F.3d 1163, 1174–81 (10th Cir. 2014), *United States v. Clark*, 717 F.3d 790, 821–22 (10th Cir. 2013), and *United States v. Gordon*, 710 F.3d 1124, 1158 (10th Cir. 2013), is unavailing. *Clark* is unhelpful because there we primarily addressed whether the district court had abused its discretion in ordering an open-ended continuance. 717 F.3d at 823. In *Gordon*, we considered the adequacy of the court's findings in both Gordon's and Clark's (Gordon's co-defendant) cases and concluded that the district court had made sufficient findings of fact and adequately explained why an ends-of-justice continuance was necessary. 710 F.3d at 1158–59. In *Banks*, we said that the record clearly established that the district court had considered the proper § 3161(h)(7)(B) factors in entering orders that "fully set forth the bases for granting the continuance and supported its conclusions with detailed factual findings." 761 F.3d at 1178. Here, the district court noted only that new counsel was on the case and needed time to review discovery. The only express reference to the § 3161(h)(7)(B) factors is in the December 14, 2009 order that the government tardily proffered. The district court did not clearly err in its detailed description about why the December 14, 2009 order was insufficient to exclude time under the STA.

29

prepare, is not enough." *Id.* at 1271–72. The district court did not abuse its discretion by considering this order inadequate.

The government also argues that the district court inaccurately relied on three additional instances where the government failed to prepare (and the district court failed to enter) proper orders. The first instance was the government's "failure to properly exclude time after filing its first superseding indictment on November 10, 2009, resulting in the [lapse] of 39 additional unexcluded days on the STA clock . . . ." Appellant's App. vol. II at 631–32. The government contends that the district court properly excluded the 39 days based on the December 14, 2009 order. As we discussed previously, the December 14, 2009 order was inadequate to exclude time under the STA.[24]

The second instance that the district court relied on was the government's trying to credit 42 days between June 2 and August 2, 2011 ("calculated conservatively," according to the district court), against the STA clock. Appellant's App. vol. II at 632. The government concedes that it "bears responsibility for failing to subsequently move the court to properly exclude this time . . . ." Appellant's Opening Br. at 44. But despite the government's failure to move for the exclusion of time, it argues that this failure did not contribute to the delay. Instead, the government contends that Koerber caused the delay in January 2011 by requesting (and receiving) an indefinite pretrial-motion-cutoff date.

---

[24] Contrary to Koerber's suggestion in the district court, the STA clock does not restart upon the return of a superseding indictment. *See Mora*, 135 F.3d at 1355.

In evaluating the government's position, we note that we later address how Koerber's role in the trial delays might affect the STA analysis. But first we conclude that the district court did not abuse its discretion in considering this 42-day period as part of the government's "pattern of neglect" leading to the STA violation. The January 27, 2011 continuance for pretrial motions did not trigger an excludable delay in the STA clock. *See* 18 U.S.C. § 3161(h)(1); *Bloate v. United States*, 559 U.S. 196, 204 (2010) (holding that time granted for preparing pretrial motions is not automatically excludable under § 3161(h)(1), but is excludable only after the district court enters appropriate findings under § 3161(h)(7)(A)). In addition, "defense responsibility for continuances does not unwind [STA] violations." *Toombs*, 574 F.3d at 1273. And we note that "the Government bears a large part of the responsibility for bringing a defendant to trial within the statutory period . . . ." *United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993). Here, both the district court and the government admittedly took no steps to exclude this time under § 3161(h).

The third instance of unexcluded delay was the government's allowing 12 days (from August 15 to August 27, 2013) to count toward the 70-day STA clock after the district court suppressed Koerber's statements and derivative evidence obtained during the two February 2009 interviews. The government now argues that those 12 days should not count against the STA clock, because the district court's purported ends-of-justice continuance from May 1, 2012, excluded all time from that date through August 2013.

31

We conclude that the district court did not abuse its discretion in including this 12-day period as part of the government's pattern of neglect. At the March 30, 2012 hearing where it ordered the time excluded, the district court said only that a continuance was necessary "to facilitate the parties completing the filing of the motions and things of that sort." Appellant's App. vol. III at 759. The district court did not state that it even considered the factors from § 3161(h)(7)(B) before granting the continuance. The order references additional facts (including "the amount of discovery" and "the complexity of the case") that the district court did not find at that hearing. Appellant's App. vol. I at 243–44.

In addition, in the circumstances of this case, we are uncertain that the district court could even permit such an indefinite, open-ended ends-of-justice continuance. Only in rare cases have courts permitted open-ended continuances. *See United States v. Spring*, 80 F.3d 1450, 1458 (10th Cir. 1996) (agreeing with other circuits that it is preferable to set a specific ending date for a continuance, but in "rare cases"—such as discovering a conflict of interest shortly before a complex conspiracy trial—"an open-ended continuance for a reasonable time period is permissible"). But any open-ended continuance must be reasonable in length. *Id.* Here, on May 1, 2012, the district court entered its order granting the continuance. Almost two years later, on April 23, 2014, Koerber filed his motion to dismiss. At least in these circumstances, we conclude that this lengthy continuance would exceed the bounds of discretion for excluding STA time under an ends-of-justice rationale. *See United States v. Jones*, 56 F.3d 581, 584–85 (5th Cir. 1995) (concluding that the district court abused its

32

discretion by granting an open-ended continuance that persisted for a year before the defendant filed a motion to dismiss on speedy-trial grounds).

The government also argues that the district court lacked factual support to consider the government's "practice" (on at least two occasions) of filing motions without explaining why it was entitled to exclude time under the STA. Appellant's App. vol. II at 632 n.5. First, the district court focused on the government's motion to reconsider the district court's suppression ruling. On February 14, 2014, four days after voluntarily dismissing its appeal of the district court's suppression ruling, the government filed its motion. In addition to asking the district court to reconsider its earlier ruling, the government sought permission to brief the derivative-evidence issue. At a March 28, 2014 hearing, Koerber argued that the government had not "met the standard to have the court reconsider on that issue" and that the district court had already addressed the derivative-evidence issue. Appellant's App. vol. III at 960.

On March 28, 2014, the district court denied the government's motion to reconsider. The district court stated that it would have Koerber file a motion on the derivative-evidence issue if necessary "[r]ather than taking us back to reconsidering the earlier ruling." *Id.* at 961. Koerber objected and argued that he had no way to file a motion to suppress the fruits of his 2009 statements when he was still unaware of what evidence the government had obtained from those statements. The district court agreed with Koerber, stating that "unless the defendant knows all of the evidence the government intends to rely upon, it kind of puts him in a hard burden to say what he

33

is going to argue is excluded." *Id.* at 962. The district court required the government to file an initial brief on this issue.

The government argues that it did not engage in any impropriety by filing this motion. We conclude that the district court did not clearly err by considering this motion as part of its pattern-of-neglect analysis. We note that the government did not move to reconsider within the time to appeal the district court's suppression order but instead waited until after it had our court dismiss its appeal. *United States v. Randall*, 666 F.3d 1238, 1243 (10th Cir. 2011) (holding that a motion for reconsideration in a criminal case must be filed within the 14-day period for filing a notice of appeal). And as the district court noted, the government's reason for dismissing its appeal was hardly an excusable one—it had failed to comply with the basic rule that it first obtain the Solicitor General's authorization to appeal. *See* 28 C.F.R. § 0.20(b) (stating that the Solicitor General determines "whether, and to what extent, appeals will be taken by the Government to all appellate courts"). Even then, the government filed a motion to reconsider in the district court despite the Solicitor General's decision not to authorize the government to appeal. *Cf. United States v. Centracchio*, 236 F.3d 812, 813 (7th Cir. 2000) (concluding that the Solicitor General's approval means there is "no significant danger that the appeal will be frivolous, warranting dismissal rather than disposition on the merits").

The second motion the district court noted was the government's two-sentence motion on April 3, 2014, for an order excluding time under the STA. The government did not move for a continuance or list grounds for excluding time under the STA. *See*

34

*Toombs*, 574 F.3d at 1269–70 (listing grounds for which the government requested a continuance). Instead, the government attached a proposed order that did not reference the § 3161(h)(7)(B) factors, but instead generally concluded that the "ends of justice outweigh the best interests of [Koerber] and the public in the speedy trial." Appellant's App. vol. I at 329.

The government argues that this motion was not for the "mere purpose" of excluding time but was part of its "efforts to have the court satisfy its responsibilities under the [STA]." Appellant's Opening Br. at 47. The district court did not clearly err by counting this motion as part of the government's pattern of neglect and dilatory conduct. The district court found that this motion was an example of "requesting . . . other relief completely absent the necessary artifice for requesting such relief." Appellant's App. vol. II at 632 n.5. The government's motion fell far short of what is necessary to exclude time under the STA. *See Toombs*, 574 F.3d at 1272 (concluding that the continuance motions and the district court's orders failed to discuss "the nature of the recently disclosed discovery, the relevance or importance of the discovery, or why the district court thought it proper to grant an approximately two-month continuance in each of the orders"). The responsibility for compliance with the STA rests with both the government and the district court. *Id.* at 1273. The district court did not clearly err by including the April 3, 2014 motion as an example of the government's failing to fulfill that responsibility.

The government next argues that the district court abused its discretion by considering the "significant problems with the substantive prosecution of this case

35

essentially amounting to 'a pattern of widespread and continuous misconduct.'" Appellant's App. vol. II at 632 (quoting *United States v. Ballivian*, 819 F.2d 266, 267 (11th Cir. 1987)). The government contends that its substantive conduct in the case is unrelated to the STA violation, meaning that the district court should not have considered it. *See Saltzman*, 984 F.2d at 1093 ("The dismissal provisions of the [STA] . . . may not be used to remedy other violations."); *Ballivian*, 819 F.2d at 266–67 (addressing the government's alleged misconduct before sentencing). Specifically, the government argues that the district court failed to link any of the following acts to the STA violation: (1) the government's conduct resulting in suppression of the February 2009 interviews; (2) the government's "puzzling" discovery practice; (3) Koerber's having "tried in vain since [the suppression order] to obtain information from the Government about what the basis of its prosecution will be in the absence of the February 2009 interviews"; (4) the government's relying on privileged information in the initial stages of the prosecution; and (5) the government's producing 1,400 pages of discovery *after* the district court held the hearing on whether to dismiss with or without prejudice despite having that evidence for years and without explaining the late production or describing the content. Appellant's App. vol. II at 632–35.

The district court did not abuse its discretion in considering these facts. The district court concluded that the government's discovery practice raised "a strong inference of tactical delay on the part of the Government in its prosecution of the

case."[25] *Id.* at 633. The government does not dispute that four of the five events occurred.[26] Instead, it argues that the district court should not have relied on this conduct because it was unrelated to the STA violation.

We disagree. Section 3162(a)(2) does not limit a district court's consideration to just the three enumerated factors. The district court "shall consider, *among others*," the three listed factors. 18 U.S.C. § 3162(a)(2) (emphasis added). In addition, a district court can consider whether the government attempted to gain or did gain a tactical advantage through delay. *See United States v. Kramer*, 827 F.2d 1174, 1177 (8th Cir. 1987) (finding that the second factor supported dismissal without prejudice when "the failure to comply with the [STA was not] the result of a delay by the government to gain a tactical advantage"); *United States v. Simmons*, 786 F.2d 479, 485–86 (2d Cir. 1986) (finding that the second factor favored dismissal without prejudice when the defendant did not show how the delay was "designed to

---

[25] The district court also concluded that Koerber had "amply shown the direct 'causative link between the government's truly blameworthy behavior and the speedy trial infraction.'" Appellant's App. vol. II at 629 (quoting *Hastings*, 847 F.2d at 927).

[26] We do agree with the government that the district court should not have relied on the government's purported failure to provide Koerber with the basis of its prosecution after the district court suppressed evidence from the February 2009 interviews. After suppression, the government told Koerber and the district court that it would provide a proposed witness list with the dates of interviews and a proposed exhibit list that would describe the exhibit, its origin, and when the government acquired the exhibit. The government also noted that both lists would "denote whether the witness or exhibit was mentioned by [Koerber] in the suppressed statements." Appellant's App. vol. II at 515. In fact, the government filed this list less than a week later. On remand, the district court should remove this fact— Koerber's having "tried in vain since [the suppression order] to obtain information from the Government about what the basis of its prosecution will be in the absence of the February 2009 interviews"—from its consideration. *Id.* at 633.

gain a tactical advantage for the government"); *cf. United States v. Cone*, 310 F. App'x 212, 216 (10th Cir. 2008) (unpublished) (noting that, in the Sixth Amendment speedy-trial context, the government's attempt to "delay a trial to gain a tactical advantage over the defense will weigh 'heavily' against the government" (quoting *Barker v. Wingo*, 407 U.S. 514, 531 (1972))). The district court's tactical-delay finding was not clearly erroneous.

But we agree with the government's final argument for the second factor and conclude that the district court abused its discretion by failing to fully consider Koerber's responsibility in the STA delay. "In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay." *Cano-Silva*, 402 F.3d at 1036. The defendant's "culpable conduct and, in particular, his responsibility for the failure to meet the timely trial schedule in the first instance are certainly relevant as 'circumstances of the case which led to dismissal' . . . ." *Taylor*, 487 U.S. at 339 (quoting 18 U.S.C. § 3162(a)(2)). "A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *Saltzman*, 984 F.2d at 1094 (alteration omitted) (quoting *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988)).

Certainly, the district court noted that Koerber's briefing of issues caused "a number of significant 'delays'" but apparently discounted that because the STA already "carve[s] out of the timing" such delays. Appellant's App. vol. II at 627. By this, we understand the district court to have said that the delays caused by Koerber's

38

motions were excluded under the STA against its 70-day speedy-trial limit. But the district court did not consider any of the other events contributing to the delay for which Koerber may be responsible. Instead, the district court focused on the government's role, correctly noting that the government's "conduct is necessarily central to this inquiry." *Id.* But the district court was not free to ignore Koerber's other acts that may have partially contributed to the STA violation. For example, the government asserts that Koerber "consistently resisted deadlines" in lieu of proceeding to trial. Appellant's Opening Br. at 34–35. Specifically, it points to Koerber's six motions to extend deadlines.

The government also argues that Koerber disregarded his STA rights by waiting passively and acquiescing to the postponement of his case. *See Saltzman*, 984 F.2d at 1093–94. In *Saltzman*, we noted that the defendant "disregarded his speedy *indictment* rights in an effort to cooperate with the Government as an informant and thus gain the advantage of a lesser sentence." *Id.* at 1093 (emphasis added). We concluded that the defendant knowingly acquiesced to the delay and counted that against him in the § 3162(a)(1) analysis. *Id.* at 1094.

The government can point to times when Koerber acquiesced to continuances and to the district court's postponing trial settings. For instance, despite providing subpoenaed information to the government in 2007, Koerber did not file his protective-order motion until February 2010, nearly nine months after the grand jury's indictment. In addition, Koerber did not file his motion to suppress statements from the February 2009 interviews until April 2012. Moreover, Koerber did not file a

motion to dismiss for an STA violation until April 2014—nearly five years after the grand jury returned its initial indictment.

At the same time, Koerber filed his motion before trial when it was clear that there was an STA violation in this case. *See* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."); *United States v. Lugo*, 170 F.3d 996, 1001 (10th Cir. 1999) (holding that the defendant waived the right to dismissal under § 3162(a)(2) when he did not file a motion to dismiss before trial). And Koerber did not simply acquiesce to delays; instead, he asserted other rights in various motions— motions that took the district court considerable time to resolve. *See Saltzman*, 984 F.2d at 1094 (stating that a defendant "who waits passively while the time runs has less claim to dismissal with prejudice" than someone who demands but does not receive prompt attention). One such motion is Koerber's April 2012 motion to suppress statements from the February 2009 interviews. The district court held a hearing in November 2012 and additional argument in April 2013. Not until August 15, 2013, did the district court grant Koerber's motion.

On remand, the district court should consider whether any of Koerber's other actions in the case contributed to the STA delay and, if so, what effect that has on the second factor in light of "the Government's pattern of neglect and dilatory conduct in managing the STA clock in this case." Appellant's App. vol. II at 627. The district court need not revisit any of its other findings with this factor, because they are not clearly erroneous. It simply must decide whether any of Koerber's actions

contributed to the STA delay in its analysis of this factor and then once again balance the statutory factors.

C.     *The Impact of Reprosecution on the Administration of the STA and on the Administration of Justice*

For this last enumerated factor, "a court should consider, [among other things], whether the delay caused by the government was intentional and the prejudice suffered by the defendant from the Act's violation." *Toombs*, 713 F.3d at 1281. "The length of delay is also relevant." *Id.*

First, the government argues that its role in the admitted STA violation was unintentional. It points out its "consistent efforts to move the case to trial." Appellant's Opening Br. at 54. We disagree with the government. The district court concluded that it could not allow reprosecution "given the approach that has been taken in the current federal case." Appellant's App. vol. II at 636. Although the government says that it only "bears a measure of responsibility for the technical violations of the [STA]," Appellant's Opening Br. at 47, it admits in its brief its "culpability related to the faulty preparation of [STA] orders, which allowed more than 70 non-excludable days to pass," *id.* at 54. The district court also quoted one of its previous orders expressing its need to "prevent the erosion of citizens' faith in the even-handed administration of the laws."[27] Appellant's App. vol. II at 635. The district court could rely on the government's mishandling of the case—the February

---

[27] In considering this factor, the district court also referred back to its analysis of the second factor, including its tactical-delay finding and the other instances of the government's unacceptable conduct in prosecuting Koerber.

41

2009 interview, the delayed production of thousands of pages of documents, and so forth—resulting in the STA violation in imposing the more serious sanction of dismissal with prejudice.[28] *See Bert*, 801 F.3d at 137 ("It is also clear that the administration of justice—and certainly of the [STA]—would be well served by whatever actions the court may need to undertake in order to avoid future speedy trial violations.").

The government also contends that the district court erred in concluding that Koerber had suffered prejudice. We require a defendant to show prejudice "other than that occasioned by the original filing."[29] *Williams*, 576 F.3d at 1159; *Saltzman*, 984 F.2d at 1094. We agree with the district court's conclusion that Koerber showed prejudice. The district court noted that the government has mishandled critical information, the loss of which would be an issue if the case proceeded. In this regard, the government admitted during a motions hearing that it had lost 27 discs of information, and the district court agreed with Koerber when it concluded that this loss would "become an issue in future motion practice should that prove necessary." Appellant's App. vol. II at 636 n.8. The district court also agreed with Koerber that

---

[28] In its prejudice discussion, the district court stated that it "cannot ignore the sordid history of this case, where [Koerber] has already established how the government intentionally intruded on his constitutional rights and attorney-client relationship to secure an indictment in the first instance." Appellant's App. vol. II at 637.

[29] The district court should not have presumed prejudice under *Shillinger*. In *Shillinger*, we held that we presume prejudice in "certain Sixth Amendment contexts," including when the state had directly interfered with a defendant's right to counsel. 70 F.3d at 1141. But in the STA context, the defendant has the burden to show prejudice. *Williams*, 576 F.3d at 1159. Still, the district court did not slight this factor because it also concluded that Koerber had met this burden.

witnesses' memories were "already proving severely impaired," including one agent who had previously testified that "he remembers little of several critical communications he had back in 2007 and 2008." *Id.* Even so, the government argues that Koerber's unsubstantiated assertions were insufficient for the district court to find prejudice.

We disagree. The government indeed admitted that it had lost the discs. And the above-mentioned agent was not the only one who struggled to recall prior events—one of Koerber's previous lawyers described his recollection of his conversations with IRS agents as "vague." Appellant's App. vol. III at 857. The district court properly found that Koerber had suffered prejudice and properly agreed with Koerber that, "with the passage of time, the prejudice grows." Appellant's App. vol. II at 636 n.8; *cf. Abdush-Shakur*, 465 F.3d at 464 (concluding that the defendant did not suffer prejudice based on his "bald allegation" that a crucial witness was "lost"); *United States v. Ballard*, 779 F.2d 287, 294 (5th Cir. 1986) (denying a Sixth Amendment speedy-trial claim because, among other things, the defendant had not "pointed to any lost evidence or witnesses with faded memories").

In addition, the district court properly considered the length of time that had passed and the delay in this case. The district court discussed the "protracted nature of the case" that "extend[ed] over five years and cycl[ed] through a dozen Assistant United States Attorneys . . . ." Appellant's App. vol. II at 635 n.7. The government first indicted Koerber in May 2009 and filed its second superseding indictment in September 2011. The district court dismissed this case in August 2014—almost three

43

years after the second superseding indictment and more than five years after the grand jury returned the original indictment. Another circuit has concluded that a case that took 18 months to begin trial was an inexcusable delay that "weigh[ed] heavily in favor of a dismissal with prejudice." *United States v. Clymer*, 25 F.3d 824, 832 (9th Cir. 1994). The Supreme Court in *Taylor* recognized that the length of the delay, standing alone, is a significant consideration in deciding whether to dismiss with or without prejudice. 487 U.S. at 340; *see Clymer*, 25 F.3d at 831–32 (noting that the length of the delay, 18 months, is not dispositive but is important given "the sheer length of the period involved" (quoting *United States v. Stayton*, 791 F.2d 17, 21 (2d Cir. 1986))).

We conclude that the district court did not slight or ignore this factor. *See Saltzman*, 984 F.2d at 1092.

## CONCLUSION

For the most part, the district court properly considered the § 3162(a)(2) factors in deciding to dismiss Koerber's case with prejudice. But the district court abused its discretion in two ways. First, it considered matters unrelated to the seriousness of the charged offenses in measuring that factor. Second, it failed to consider sufficiently Koerber's role, if any, in the STA delay when it evaluated the facts-and-circumstances factor.

We reverse and remand to the district court for reconsideration in accordance with our opinion.[30] *See Abdush-Shakur*, 465 F.3d at 462 ("Nevertheless, the district court retains broad discretion whether to dismiss the indictment with or without prejudice.").

On remand, the district court should properly consider the seriousness-of-the-offense factor (that is, the district court should weigh that factor in favor of dismissing without prejudice in accordance with its conclusion that the charged offenses are serious). The district court also should include Koerber's role in the delay, if any, in its evaluation of the second factor. The district court need not reevaluate (but should still include) the other facts and circumstances upon which it relied to dismiss Koerber's case with prejudice. After including these two considerations in its analysis, the district court retains discretion to conclude that, among other things, "the sordid history of this case," Appellant's App. vol. II at 637, and the "Government's pattern of neglect and dilatory conduct in managing the STA clock" outweigh those facts and require a dismissal with prejudice,[31] *id.* at 626.

---

[30] We remand because the district court retains discretion to dismiss with or without prejudice after reevaluating in accordance with our opinion. *See United States v. Rushin*, 642 F.3d 1299, 1308 (10th Cir. 2011); *see also Taylor*, 487 U.S. at 336 (stating that "the role of an appellate court is not to substitute its judgment for that of the trial court").

[31] If the district court on remand dismisses the indictment *without* prejudice, it should then consider Koerber's alternative argument for dismissal based on a Sixth Amendment speedy-trial violation. *See Larson*, 627 F.3d at 1207 (considering a Sixth Amendment speedy-trial claim after finding an STA violation because, if the defendant prevailed on the Sixth Amendment claim, "it 'would require the district court to dismiss the case with prejudice'" (quoting *Toombs*, 574 F.3d at 1274)).

45

14-4107, *USA v. Claud R. Koerber*

**HARTZ,** Circuit Judge, concurring:

I agree that we must reverse because the district court committed legal error in assessing the seriousness of the charged crime and in not considering the culpability of Defendant in acceding to, and even encouraging, the delays in the case. I write separately to point out two additional errors by the district court: (1) its consideration of factors that did not delay the trial (or at least the court's analysis did not point to such delay) and (2) its assumption that Defendant was prejudiced by the delay without requiring any showing of prejudice.

On the first point, the majority opinion relies on the language of the Speedy Trial Act that instructs a court deciding whether to dismiss with prejudice that it should consider "the facts and circumstances of the case which led to the dismissal." 18 U.S.C. §3162(a)(2). But we have repeatedly read that language as requiring courts to "focus on the culpability of the *conduct that led to the delay*." *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005) (emphasis added); *accord United States v. Toombs*, 713 F.3d 1273, 1280 (10th Cir. 2013); *United States v. Rushin*, 642 F.3d 1299, 1313 (10th Cir. 2011); *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009); *United States v. Jones*, 213 F.3d 1253, 1257 (10th Cir. 2000); *United States v. Saltzman*, 984 F.2d 1087, 1093 (10th Cir. 1993); *see also United States v. Williams*, 314 F.3d 552, 559 (11th Cir. 2002) ("In addressing the facts and circumstances leading to the speedy-indictment violation [under the Speedy-Trial Act], we focus on the culpability of the delay-producing conduct." (internal quotation marks omitted)). It is hard for me to

imagine that Congress intended to authorize dismissal with prejudice because of government (or court) errors under the Speedy Trial Act that do not delay trial; dismissal without prejudice will suffice to deter such violations.

One repeated government error was the failure of the prosecution to prepare proper ends-of-justice orders to support continuances already granted by the district court. These failings show baffling incompetence. But I see no explanation of how they delayed the trial. The decision to delay had already been made. The trial would not have occurred sooner if the prosecution had honored the court's request and prepared proper orders.

Two other prosecution errors that the district court did not tie to trial delay were "bas[ing] the superseding indictment in substantial part on attorney-client privileged information" and "illegally planning and conducting impermissible *ex-parte* interviews with Defendant" before he was indicted. R., Vol. 1 at 70 (Dist. Ct. opinion at 13). To the extent that this conduct was improper, other sanctions are appropriate. But as we have said, "The dismissal provisions of the Speedy Trial Act. . . may not be used to remedy [violations of other laws]." *United States v. Saltzman*, 984 F.2d 1087, 1093 (10th Cir. 1993) (government had failed to conform to requirements of Bail Reform Act); *see United States v. Hastings*, 847 F.2d 920, 927-28 (1st Cir. 1988) ("To take punitive action addressed to misconduct causally unrelated to any actual speedy trial infraction would be tantamount to sanctioning dismissal of cases for prosecutorial misconduct. . . . This . . . is a road which we believe to be closed on this appeal because the Speedy Trial Act, as we interpret it, demands a causal nexus between misconduct and trial delay in order to justify

reliance on the former in barring reprosecution."). Perhaps the above alleged misconduct by the prosecutor delayed the trial in some way, but the district court did not explain the causal connection. And on remand if it does explain the connection, the focus must be on the proceedings required to address the misconduct, not on the gravity of the misconduct itself.

I now turn to the district court's legal error in assessing prejudice. Yes, prejudice is more likely as the delay grows. The defendant can be prejudiced by having charges hanging over him, making return to normal life impossible. Or there may be restrictions on the defendant's freedom, from either incarceration or conditions of release. But the most important form of prejudice is prejudice to defending against the charges. *See United States v. Larson*, 627 F.3d 1198, 1210 (10th Cir. 2010) (addressing constitutional right to speedy trial); *United States v. Dessesaure*, 556 F.3d 83, 86 (1st Cir. 2009). And the defendant must show specific prejudice in this regard. Generalized concern about lost evidence or faded memories does not suffice. After all, what has been lost may have been incriminating, so the delay benefited the defendant. As we said in *United States v. Abdush-Shakur*, 465 F.3d 458, 464 (10th Cir. 2006): "[The defendant] claims a witness to the attack . . . could not be found, but that bald allegation is insufficient to establish prejudice. . . . There is no evidence the defendant lost a crucial witness because of the delay, nor did he offer any evidence as to how the absence of this witness testimony prejudiced his case." (ellipsis and internal quotation marks omitted). And in *United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir. 2000), we upheld the dismissal without prejudice even if there had been 414 nonexcludable days of delay, in part because of the

-3-

defendant's "inability to demonstrate prejudice." We wrote that "[the] witness [that the defendant] claims to be unable to find would be a minor witness, and [he] has not shown how her testimony would have been at all helpful to him." *Id.*; *cf. United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998) (in rejecting a due-process claim based on preindictment delay, during which two witnesses had died, we explained, "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice. Defendant must show definite not speculative prejudice, and in what specific manner missing witnesses would have aided the defense.").

This is not to deny that delay in itself may be so long as to justify dismissal with prejudice for violation of the Speedy Trial Act. *See United States v. Stayton*, 791 F.2d 17, 21-22 (2nd Cir. 1986). But we should not confuse that proposition – which requires no showing of prejudice – with the incorrect proposition that prejudice to a defendant's defense can be inferred merely from loss of evidence.